METTLER WALLOON, LLC v MELROSE TOWNSHIP

Docket No. 269051. Submitted September 11, 2007, at Lansing. Decided
     October 2, 2008, at 9:05 a.m. Leave to appeal denied, 483 Mich ___.
Mettler Walloon, L.L.C., brought an action in the Charlevoix Circuit
     Court against Melrose Township and the township's planning
     commission and zoning board of appeals, seeking authorization to
     develop certain properties within the township, which were zoned
     C-3 (village commercial) at all relevant times, and damages for the
     defendants' alleged wrongful interference with such development.
     Following mediation, the parties agreed to the entry of a partial
     consent judgment that resolved the issues regarding the develop-
     ment of the subject property. Following a bench trial with regard to
     the plaintiff's claims for damages that were based on alleged
     violations of 42 USC 1983, a taking without just compensation,
     inverse condemnation, and promissory estoppel, the court, Rich-
     ard M. Pajtas, J., decided all the claims in favor of the defendants.
     The plaintiff appealed from the trial court's judgment and orders
     with regard to the damages claims.

        The Court of Appeals *held*:

        1. 42 USC 1983 applies to violations of the federal constitution
     or federal laws and does not provide a remedy for a violation of the
     Michigan Constitution. The trial court correctly rejected the
     plaintiff's count that alleged a § 1983 claim.

        2. Governmental conduct must be so arbitrary and capricious
     as to shock the conscience in order to sustain a substantive due
     process claim against municipal actors. The plaintiff did not
     present evidence of any conduct by township officials that was so
     outrageous or arbitrary as to shock the conscience. The trial court
     did not err in rejecting the substantive due process claim.

        3. The trial court did not err in using as part of its rationale in
     resolving the procedural due process claim in favor of the defen-
     dants the factual finding that the plaintiff failed to prove that the
     township's supervisor had a personal pecuniary interest in the
     outcome of the planning process or a motive to further a pecuniary
     interest.

4. The trial court did not err in determining that the plaintiff failed to show that the township supervisor's alleged improper removal of the chairman of the planning commission was a cause in fact of the planning commission's vote to reject the plaintiff's development plan. The plaintiff failed to prove the essential element of proximate cause with regard to the § 1983 claim for damages.

5. The plaintiff abandoned on appeal its inverse-condemnation claim. The trial court did not err by finding no cause of action on the temporary-taking claim in view of the plaintiff's failure to establish a basis on which error can be found.

Affirmed.

1. CONSTITUTIONAL LAW — CIVIL RIGHTS.

The all-purpose federal civil rights statute, 42 USC 1983, applies to violations of the federal constitution or federal laws and does not provide a remedy for a violation of the Michigan Constitution.

2. CONSTITUTIONAL LAW — DUE PROCESS — SUBSTANTIVE DUE PROCESS — ZONING — PROPERTY DEVELOPMENT.

A developer does not always have a protected property interest in a particular outcome of land-use planning; the rejection of development projects and refusals to issue building permits do not ordinarily implicate substantive due process even where governmental officials have violated state laws or administrative procedures; substantive due process prevents governmental power from being used for purposes of oppression, or abuse of governmental power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interest.

*Carson Fischer, P.L.C.* (by *Robert M. Carson* and *Michelle C. Harrell*), for the plaintiff.

*Daniel W. White* for the defendants.

Before: MARKEY, P.J., SAAD, C.J., and WILDER, J.

WILDER, J. Plaintiff Mettler Walloon, L.L.C. (Mettler Walloon), appeals as of right the trial court's final judgment upon the remaining claims and its decision after trial. The trial court's orders decided the pertinent

issues in defendants' favor, finding no cause of action on plaintiff's damages claims.[1] We affirm.

I

The principal member of plaintiff is Louis P. Mettler (Mettler). Mettler acquired the property at issue in various parts in 2002 and 2003. Mettler acquired parcels on Walloon Lake (lakeside parcels) and parcels across the highway from the lake (dry side parcels). The lakeside parcels in question were zoned C-3 (village commercial) at all relevant times. The zoning ordinance states that the village commercial "[d]istrict is intended to provide areas for business uses that serve the township and that are located in the village area." Melrose Township Zoning Ordinance (MTZO), art IV, § 6.6(A). Numerous uses are permitted in the village commercial zone, including boathouses and wet storage, dry boat storage, marinas, and "[a]partments above all of the allowed uses[.]" MTZO, art IV, § 6.6(B).

At the time Mettler purchased the initial parcels, he had a marina permit and was considering using the lakeside parcels for the sale of antique boats. Mettler was also contemplating boathouses with living spaces above them. Mettler initially planned to develop his property as a planned unit development (PUD).

In March of 2003 plaintiff entered into a purchase agreement with the Hass brothers for the acquisition of nine additional parcels, three on the lakefront and six on the opposite side of the highway. There had been a fire on one of the Hass parcels, and some people encouraged Mettler to buy the Hass properties. After

---

[1] The trial concerned the damages claims. Plaintiff's claim regarding its ability to develop the subject property was resolved by a partial consent judgment.

purchasing the Hass properties, Mettler incorporated them into the site plan.

Before the purchase of the Hass properties, the plan for the lakeside parcels was to build two buildings, each in turn with two units (four total), and move an existing building across the street to be used for restoration of wooden boats. But the acquisition of the Hass properties doubled the site plan size from two buildings to four with two living units in each (eight total living units), and then one large boathouse underneath them.

Mettler initially attempted to purchase the Hass properties on land contract. It was alleged, however, that Mettler's plan subsequently began to be disfavored. Plaintiff testified at trial that at that time "there was a definite turn in the direction of the feeling . . . most definitely by Mr. [Michael] Webster," the township supervisor.

On March 28, 2003, David Drews, a project manager for Mettler, sent an e-mail to W. Randolph Frykberg, the township zoning administrator, discussing PUD issues. On March 28, 2003, Frykberg notified Webster of a meeting with Drews to discuss PUD details, but on that same date, David Drews notified Frykberg that plaintiff would not pursue a PUD, would seek approval of its development under existing zoning, and was no longer contemplating the sale of antique wooden boats.

On April 24, 2003, the Melrose Township Zoning Board of Appeals (ZBA) held a meeting. Among those present were Richard Hermann, the chairman of the planning commission and a planning commission representative on the ZBA, as well as Frykberg and township attorney Bryan Graham. Graham stated that the meeting was convened to define the term "boathouse." The ZBA acknowledged that a boathouse is a use permitted by right in the C-3 zone, and that "boat-

house" is not defined in the ordinance. The ZBA interpreted "boathouse" to mean "a building or shed, usually built partly over water, for sheltering a boat or boats, but which excludes any residential use."

On April 29, 2003, Webster removed Hermann from his position on the planning commission. On May 2, 2003, Mettler submitted a site plan for the lakeside parcels. The plan proposed marina and boathouse uses. The township directed the site plan to Graham for review. On May 23, 2003, Graham sent a letter to plaintiff indicating deficiencies in the site plan.

On June 20, 2003, Webster sent an e-mail to Frykberg, with copies to various township officials, stating:

> I want to reiterate the importance of having the amendments completed prior to continuing with any receipt of application or review of the Mettler project or any large scale project. These types of projects must meet the amended standards, particularly the "performance guarantee" amendment to protect the interest of the community.
>
> I realize that delays will frustrate Mr. Mettler and others, but if the policy has been "no condominiums allowed on the waterfront in the Village" then that is the policy we must follow until zoning is clarified or changed. I have made it clear that condominiums under the guise of boathouses was [sic] not appropriate and that there would be public discontent, but some people just did not want to listen. I continue to get negative comments and letters in regard to the condo/boathouses.
>
> I feel that the priority of the Township Board is to remedy any misunderstandings as to zoning interpretations before proceeding with any large scale projects such as Mettler's. Allowing the Zoning Board of Appeals and the Planning Commission to clearly define the interest of the township will take the onus of such a momentous decision off of a single individual and place it on several people.
>
> In the long run, having taken deliberate steps to clarify and improve our zoning ordinance will be best for the

community. To expedite matters in the interest of a developer is shortsighted and is a recipe for disaster. I expect that you will act accordingly.

At a June 23, 2003, planning commission meeting, Graham recommended zoning ordinance amendments. Thomas Swenor, the newly elected chairman of the planning commission, announced a special meeting would be held on July 17, 2003, to conduct a public hearing on the proposed amendments. Hermann, who was present, questioned the need for a special meeting, but Frykberg explained that he was expecting a lengthy site plan review at the next regular meeting and that the amendments should be considered first. Also at the June 23, 2003, planning commission meeting, it was announced that the commission would consider amending the zoning ordinance to add the word "commercial" in front of "boat houses" in the C-3 zone, and that a public hearing would be held at the July 17 special meeting to consider doing so.

On July 17, 2003, the planning commission held a special meeting, considered zoning ordinance amendments, and conducted a public hearing. The commission considered the proposed amendment to add "commercial" before "boathouses and wet storage" in the C-3 zone. Swenor explained the purpose of the amendment, but commission member Wayne Ramsey suggested that the amendment was unnecessary because the ordinance already designates C-3 as a commercial zone. Frykberg indicated that questions and ambiguity were what prompted the proposal, and that it was requested by the township board. He agreed that the purpose and intent of the zoning ordinance would be unchanged, but stated that it was being proposed in the interest of clarity. The commission unanimously passed a motion to recommend acceptance of the amendment to add "commer-

cial" in front of the phrase "boat houses and wet storage" that are allowed uses in a C-3 zone.

On July 21, 2003, the ZBA met. Chairman Errol Lee stated that the meeting was a continuation of the earlier meeting regarding interpretation of the zoning ordinance provisions, as requested by the township board. A motion was filed, based on findings of fact, to rule that a boathouse must be commercial to be allowed in a C-1 or C-3 zone. The motion passed.

On July 18, 2003, Mettler's development plan became available for public view at the library. On July 28, 2003, the planning commission held a regular meeting. The commission first dealt with the unfinished business of reviewing Mettler's preliminary development plan. The meeting had to be moved to the fire hall to accommodate the additional persons who wanted to attend. There was substantial public discussion about whether Mettler's proposed development was an allowed use in a C-3 zone. There was concern that the duplex concept would result in the boathouses below being sold or leased on a long-term basis to the upstairs occupant, effectively eliminating any semblance of a commercial enterprise. When asked for his definition of a "commercial" use of the proposed buildings, John Turner, plaintiff's counsel, repeatedly responded that the terms and conditions of access would be determined by the owner. Following the close of the public hearing portion of the July 28, 2003, meeting, the commission deliberated, but was not prepared to decide whether the proposed project was commercial in nature and adjourned the issue to a meeting on August 1, 2003.

On July 30, 2003, Frykberg provided a memorandum to the planning commission, for purposes of the August 1, 2003, meeting. Frykberg noted that the site plan included two garages on the street side of the first floor

and two boathouses on the lakeside of the first floor in each of the four buildings. Frykberg opined that the proposed use of the garages and boathouses "is not, to me, a commercial use." Frykberg opined that the proposed use of the garages and boathouses "does not, to me, meet the purpose of the C-3 Village Commercial" zone, viz., to provide areas for business uses. Frykberg recommended denial of the site plan:

> Because the proposed use of the property for garages and boathouse[s] does not meet the common or standard utilization of the word commercial, nor does it meet the intent of the C-3 Village Commercial district, *I recommend that the Planning Commission deny the Site Plan* review as presented. This is not to say that the project, with some modifications, or a re-submittal as a PUD, could not be approved, just that the present form of the application does not meet the Ordinance. [Emphasis added.]

On August 1, 2003, the planning commission reconvened. Graham referenced exhibits made available to members, including two sets of proposed findings of fact. The two sets of proposed findings of fact were called "option one" and "option two." The proposed findings of fact for option one supported a decision not to approve the plan, while the findings of fact for option two supported a decision to permit the use and allow the review process to proceed to the next step (actual site plan review). The commission ultimately adopted the findings of fact in option one.

Number 15 of the findings of fact for option one states in relevant part: "the Planning Commission finds that the long-term rental of a boathouse in close proximity to the apartment unit is the functional equivalent of the person owning both the apartment condominium unit and the boathouse condominium unit." The commission found that merely labeling the boathouses as commercial uses does not *ipso facto* make them com-

mercial, and "[b]ased on all of the information before it, the Planning Commission [found] that the proposed boathouses are not commercial in nature." The commission found that the ordinance "does not permit a residential use as the princip[al] use of property within the C-3 zoning district." Therefore, the commission found "that the applicant's proposed development is not a use allowed by right in the C-3 zoning district."

After the proposed findings of fact for both options were read, Ramsey opined that "the currently proposed plan does not meet the definition of a commercial use." Planning commission member William Stetson essentially agreed, because "rentals could vary in length and the condo owners may have first choice at a long-term rental."

Ramsey moved, seconded by planning commission member Al Reeves, that on the basis of the findings of fact, the development plan as a use by right in the C-3 zone be denied. After the motion, additional discussion by members occurred. Ramsey encouraged Mettler to work with Frykberg to alter the plan to provide an acceptable proposal. He indicated that a PUD proposal should be explored. Swenor expressed support for the mixed-use PUD idea. Swenor and Graham noted that the option to apply as a PUD is the applicant's choice and the township cannot force it to do so. The commission unanimously passed a motion to deny the development plan.

On September 2, 2003, Mettler filed with the ZBA an appeal of the planning commission's rejection of the development plan. On September 23, 2003, Graham prepared a memorandum noting that the scope of the ZBA's authority (in considering Mettler's appeal from the planning commission's denial) is limited to considering the evidence presented to the planning commission.

On October 8, 2003, the ZBA met to consider Mettler's appeal. Chairman Lee stated that the ZBA was to

review the procedures that the planning commission used to deny the site plan. Graham added that the ZBA should look at the planning commission's findings of fact to determine if the decision was correct, i.e., was the decision supported by the findings of fact. Frykberg stated that the available documentation was the same as what had been available to the planning commission.

Turner gave a lengthy presentation. Turner argued that Webster removed Hermann from the planning commission because Webster thought that Hermann did not share the vision of the township. Turner argued that this was done to slow down consideration of the application. Turner disagreed with Graham's memorandum about the ZBA's review being limited to the evidence that was available to the planning commission. Turner argued that Graham could not "establish the rules at the beginning of a meeting," and that the ZBA should establish the rules, not the township's attorney. Turner argued that there were no findings of fact allowed at the second commission meeting, no policy was set ahead of time, no public comment was allowed, and that due process is fundamental. Turner argued that the site plan was not subjected to the same procedures as other site plans.

Members of the public made various comments. After the public hearing closed, the ZBA deliberated on the appeal, considering the findings of fact made by the planning commission. The ZBA affirmed findings of fact 1 through 13, but made no decision on findings of fact 14 and 15, determining "[t]his needs more work." The minutes state that "[m]uch discussion followed on the long and short-term rental issue and Mr. Turner stated he felt there is no real evidence to substantiate the short term vs. long-term rentals as far as commercial use is concerned." The ZBA adjourned to its October 30, 2003, meeting.

On October 30, 2003, the ZBA met. The ZBA discussed and agreed unanimously to only deliberate on whether the planning commission decision was made properly and to not rehear the entire planning commission case. The ZBA made 29 findings, including finding that the planning commission's conclusion that the proposed development was not commercial in nature was proper. Accordingly, the ZBA affirmed the planning commission's decision. Chairman Lee noted that the applicant had the option of submitting new plans to the planning commission.

Plaintiff then commenced this action, seeking damages as well as authorization to develop the property. Facilitative mediation resulted in a partial consent judgment, allowing development to proceed under a revised development plan containing new commercial elements. The consent judgment requires that the boathouses be available for rent to the general public, and be rented for periods not longer than two years. The marina's commercial space (4,000 square feet) is required to be maintained as commercial in perpetuity. But the partial consent judgment did not resolve plaintiff's damages claims.

Defendants filed a dispositive motion concerning the remaining damages claims. The trial court denied it. The parties then participated in a bench trial regarding the damages claims. The trial court eventually held that there was no cause of action.

II

A

First, plaintiff argues that the trial court applied an incorrect legal standard to its claim under 42 USC 1983

when it stated that plaintiff failed to prove that township officials had a pecuniary interest behind their decisions. We disagree.

1

Following a bench trial, this Court reviews the trial court's conclusions of law de novo, and its findings of fact for clear error. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007) (a taking claim), citing *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004). A finding is clearly erroneous if panel members are left with a definite and firm conviction that a mistake has been made. *American Federation of State, Co & Muni Employees v Bank One, NA*, 267 Mich App 281, 283; 705 NW2d 355 (2005).

2

a

42 USC 1983 is the all-purpose federal civil rights statute, providing a remedy for violations of the federal constitution and other federal law. A plaintiff must demonstrate that the defendants, acting under color of state law, deprived it of a right secured by the constitution or the laws of the United States. *American Manufacturers Mut Ins Co v Sullivan*, 526 US 40, 49-50; 119 S Ct 977; 143 L Ed 2d 130 (1999). In other words: "Any person who, under color of state law, deprives another of rights protected by the constitution or laws of the United States, is liable under 42 USC 1983." *Morden v Grand Traverse Co*, 275 Mich App 325, 332; 738 NW2d 278 (2007), citing *Monell v Dep't of Social Services of the City of New York*, 436 US 658, 690-691; 98 S Ct 2018; 56 L Ed 2d 611 (1978).

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"[I]n any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated." *Co of Sacramento v Lewis,* 523 US 833, 841 n 5; 118 S Ct 1708; 140 L Ed 2d 1043 (1998). There must be an underlying violation of the federal constitution or a federal law, in order for a § 1983 claim to lie. *Manuel v Gill,* 270 Mich App 355, 374-375; 716 NW2d 291 (2006). Here, plaintiff's § 1983 count (count IV) asserts that defendants "deprived Plaintiff of its constitutionally protected rights to substantive due process and to the reasonable use and enjoyment of its property, as protected by the Michigan and United States Constitutions."

Section 1983 does not provide a remedy for a violation of the Michigan Constitution; rather, there must be an underlying violation of the federal constitution or *federal* law. *Morden, supra* at 332. "By the terms of the statute itself, a section 1983 claim must be based upon a *federal* right." *Ahern v O'Donnell,* 109 F3d 809, 815 (CA 1, 1997) (emphasis in original). Therefore, plaintiff's count IV, insofar as it asserts a § 1983 claim for violation of the Michigan Constitution, was correctly rejected.

Count IV expressly states a substantive due process claim, but does not expressly state a procedural due process claim. However, the trial court and defendants essentially consented to the trial of both a substantive due

process claim (pleaded) and a procedural due process claim (unpleaded). We therefore address both claims.

b

We first consider the substantive due process claim. The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" US Const, Am XIV, § 1. But despite the clause's reference to process, the United States Supreme Court has interpreted this clause to "guarantee[ ] more than fair process," *Washington v Glucksberg,* 521 US 702, 719; 117 S Ct 2258; 138 L Ed 2d 772 (1997), and to cover a substantive sphere as well, "barring certain government actions regardless of the fairness of the procedures used to implement them," *Co of Sacramento, supra* at 840 (quotation marks and citation omitted).

In disputes over municipal actions, the focus is on whether there was egregious or arbitrary governmental conduct. In *City of Cuyahoga Falls, Ohio v Buckeye Community Hope Foundation,* 538 US 188, 198-199; 123 S Ct 1389; 155 L Ed 2d 349 (2003), the Court stated:

> [T]he city engineer's refusal to issue the [building] permits while the petition [for repeal of a municipal housing ordinance authorizing construction of the low-income housing complex at issue] was pending in no sense constituted egregious or arbitrary government conduct. See *County of Sacramento v. Lewis,* 523 U.S. 833, 846 [118 S Ct 1708; 140 L Ed 2d 1043] (1998) (noting that in our evaluations of "abusive executive action," we have held that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense' ").

Thus, when evaluating municipal conduct vis-à-vis a substantive due process claim, only the most egregious official conduct can be said to be arbitrary in the constitutional sense.

To sustain a substantive due process claim against municipal actors, the governmental conduct must be so arbitrary and capricious as to shock the conscience. In *Co of Sacramento*, the parents of a motorcycle rider killed in a high-speed police chase of the motorcycle brought a § 1983 claim against the county, the sheriff's department, and a deputy, alleging deprivation of the rider's life without substantive due process. The Supreme Court applied a "shocks the conscience" standard and held that the Court of Appeals erred in reversing the district court's summary judgment in the deputy's favor. The Supreme Court's discussion is worth quoting at length:

> We have emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell,* 418 U.S. 539, 558 [94 S Ct 2963; 41 L Ed 2d 935] (1974), whether the fault lies in a denial of fundamental procedural fairness, see, *e.g., Fuentes v. Shevin,* 407 U.S. 67, 82 [92 S Ct 1983; 32 L Ed 2d 556] (1972) (the procedural due process guarantee protects against "arbitrary takings"), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, see, *e.g., Daniels v. Williams,* 474 U.S. [327, 331; 106 S Ct 662; 88 L Ed 2d 662 (1986)] (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised). While due process protection in the substantive sense limits what the government may do in both its legislative, see, *e.g., Griswold v. Connecticut,* 381 U.S. 479 [85 S Ct 1678; 14 L Ed 2d 510] (1965), and its executive capacities, see, *e.g., Rochin v. California,* 342 U.S. 165 [72 S Ct 205; 96 L Ed 183] (1952), criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue.
>
> Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be "arbitrary in the constitutional

sense," *Collins v. Harker Heights,* 503 U.S. [115, 129, 112 S Ct 1061; 117 L Ed 2d 261 (1992)], thereby recognizing the point made in different circumstances by Chief Justice Marshall, " 'that it is *a constitution* we are expounding,' " *Daniels v. Williams, supra,* at 332 (quoting *McCulloch v. Maryland,* [17 US 316, 407] 4 Wheat. 316, 407 [4 L Ed 579] (1819) (emphasis in original)). Thus, in *Collins v. Harker Heights,* for example, we said that the Due Process Clause was intended to prevent government officials " ' "from abusing [their] power, or employing it as an instrument of oppression." ' " 503 U.S., at 126 (quoting *DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. [189, 196; 109 S Ct 998; 103 L Ed 2d 249 (1989)] in turn quoting *Davidson v. Cannon,* 474 U.S. [344, 348; 106 S Ct 668; 88 L Ed 2d 677 (1986)]).

To this end, for half a century now *we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience.* We first put the test this way in *Rochin v. California, supra,* at 172-173, where we found the forced pumping of a suspect's stomach enough to offend due process as conduct "that shocks the conscience" and violates the "decencies of civilized conduct." In the intervening years we have repeatedly adhered to *Rochin*'s benchmark. See, *e.g., Breithaupt v. Abram,* 352 U.S. 432, 435 [77 S Ct 408; 1 L Ed 2d 448] (1957) (reiterating that conduct that " 'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency" would violate substantive due process); *Whitley v. Albers,* 475 U.S. 312, 327 [106 S Ct 1078; 89 L Ed 2d 251] (1986) (same); *United States v. Salerno,* 481 U.S. 739, 746 [107 S Ct 2095; 95 L Ed 2d 697] (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty' ") (quoting *Rochin v. California, supra,* at 172, and *Palko v. Connecticut,* 302 U.S. 319, 325-326 [58 S Ct 149; 82 L Ed 288] (1937)). Most recently, in *Collins v. Harker Heights, supra,* at 128, we said again that *the substantive component of the Due Process Clause is violated by executive action only when it "can properly be*

*characterized as arbitrary, or conscience shocking, in a constitutional sense."* While the measure of what is conscience-shocking is no calibrated yard stick, it does, as Judge Friendly put it, "point the way." *Johnson v. Glick,* 481 F.2d 1028, 1033 (CA2), cert. denied, 414 U.S. 1033 (1973). [*Co of Sacramento, supra* at 845-847 (emphases added).]

Thus, when executive action is challenged in a substantive due process claim, the claimant must show that the action was so arbitrary (in the constitutional sense) as to shock the conscience.

In *Butler v Detroit*, 149 Mich App 708, 721-722; 386 NW2d 645 (1986), the plaintiff's decedent died in a fatal shooting involving the police, and, in addition to state-law tort claims, the plaintiff brought a § 1983 claim for deprivation of life without substantive due process. The jury found in the plaintiff's favor on all counts and awarded compensatory and punitive damages on the § 1983 claim. This Court held that the plaintiff failed to adequately prove a substantive due process violation under the "shocks the conscience" test:

> [W]e must then inquire whether plaintiff "proved a case which fits the other prong of substantive due process— official acts which 'may not take place no matter what procedural protections accompany them' ". *Wilson v Beebe,* 770 F2d [578] 586 [(CA 6, 1985)]. As explained by the *Wilson* court, there "is a substantive due process right akin to the 'fundamental fairness' concept of procedural due process". *Id. Applying the "shocks the conscience test" as described in Wilson v Beebe, supra, to the facts and evidence presented in this case, we find that the plaintiff had failed to establish a cause of action under 42 USC 1983. The complained-of official conduct does not "shock the conscience" of this Court* nor does it "offend those canons of decency and fairness which express the notions of justice of English speaking peoples even towards those charged with

the most heinous crimes". *Wilson v Beebe,* 770 F2d 586. [*Butler; supra* at 721-722 (emphasis added).]

Thus, the shocks-the-conscience test has been applied in Michigan to a substantive due process claim. Michigan courts have acknowledged that the essence of a substantive due process claim is the *arbitrary* deprivation of liberty or property interests. *Landon Holdings, Inc v Grattan Twp,* 257 Mich App 154, 176; 667 NW2d 93 (2003).

Sundry decisions, both federal and state, including those involving land use planning, apply the shocks-the-conscience standard. In *Mongeau v City of Marlborough,* 492 F3d 14 (CA 1, 2007), a developer claimed a deprivation of property without substantive due process. Eugene Mongeau alleged that Stephen Reid, the city's commissioner of inspectional services, denied him a building permit and interfered in the zoning process for improper reasons. *Id.* at 16. The court held that the shocks-the-conscience standard applied to the substantive due process claim, and that the city official's conduct in opposing the developer's building permit did not shock the conscience. The court stated:

> If Mongeau believes that the City or Reid has wrongly charged or demanded too much for his building permit, he may find recourse in other laws, but not in the substantive component of the Due Process Clause of the Fourteenth Amendment. Such conduct, without more, cannot be said to transgress "some basic and fundamental principle . . . [such] that 'the constitutional line has been crossed' " and our conscience is shocked. [*Id.* at 20 (citation omitted).]

In *Mitchell v McNeil,* 487 F3d 374, 377 (CA 6, 2007), the court stated:

> To state a cognizable substantive due process claim, the plaintiff must allege "conduct intended to injure in some way unjustifiable by any government interest" and that is

"conscience-shocking" in nature. *Lewis,* 523 U.S. at 849, 118 S.Ct. 1708; *see Stemler v. City of Florence,* 126 F.3d 856, 869 (6th Cir. 1997); *Lewellen v. Metro. Gov't of Nashville & Davidson County,* 34 F.3d 345, 350-51 (6th Cir. 1994).

*Mitchell* held that the defendants' municipal policy of allowing police officers to loan their personal vehicles to informants did not deprive the plaintiffs of liberty without substantive due process. *Id.* at 377-378.

In *Torromeo v Town of Fremont, New Hampshire,* 438 F3d 113 (CA 1, 2006), the court held that the town's unjustified delay in issuing previously approved building permits after enacting a growth control ordinance did not shock the conscience, and thus did not deprive the plaintiff of property without substantive due process, even though the town did not follow procedures mandated by state law in enacting the ordinance. *Torromeo* is worth quoting at length:

> . . . We recently explained the limits on substantive due process claims arising from land-use disputes:
>
> "This Court has repeatedly held that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. The doctrine of substantive due process does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents governmental power from being used for purposes of oppression, *or abuse of government power that shocks the conscience,* or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interest. Although we have the left door [sic] slightly ajar for federal relief in truly horrendous situations, the threshold for establishing the requisite abuse of government power is a high one indeed."

*SFW Arecibo Ltd. v. Rodríguez,* 415 F.3d 135, 141 (1st Cir. 2005) (internal citations omitted).

In *Arecibo,* real estate developers sued after a state planning board incorrectly determined that their building permit had expired. *Id.* at 137. When suit was filed, the state court had already determined that the permit had been wrongly revoked. *Id.* at 138. We affirmed the dismissal of the substantive due process claim because the complaint stated "[i]n its strongest form ... that the [p]lanning board made an erroneous decision in violation of state law," which is insufficient to establish a substantive due process violation. *Id.* at 141. So too here. Plaintiffs allege that the Town violated substantive due process by enacting the growth control ordinance without following the procedures mandated by New Hampshire law. But, as in *Arecibo,* the claim is only that the Town's violation of state law caused Plaintiffs harm. This is not enough. *See id.* at 141; *see also Licari v. Ferruzzi,* 22 F.3d 344, 349 (1st Cir. 1994) (affirming dismissal of substantive due process claim based on allegations that a town planning board improperly revoked the developer's building permits and delayed processing and approval of an application for an amended permit); *PFZ Properties, Inc. v. Rodríguez,* 928 F.2d 28, 32 (1st Cir. 1991) (affirming dismissal of substantive due process claim where developer alleged that government agency failed to comply with agency regulations or practices in the review and approval process of construction plans). [*Torromeo, supra* at 118 (emphasis added).]

Thus, under federal law, even a violation of state law in the land use planning process does not amount to a federal substantive due process violation.

In *Koscielski v City of Minneapolis,* 435 F3d 898 (CA 8, 2006), the court held that the plaintiffs, operators of a firearms dealership, failed to show that a city zoning ordinance restricting where firearms dealerships could operate was so irrational and egregious as to shock the conscience, so as to violate their substantive due pro-

cess rights, where there were vacant lots meeting the requirements of the zoning ordinance. The court stated:

> Due process claims involving local land use decisions must demonstrate the "government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law." *Anderson v. Douglas County,* 4 F.3d 574, 577 (8th Cir. 1993) (internal quotation omitted). *The action must therefore be so egregious or extraordinary as to shock the conscience.* See *County of Sacramento v. Lewis,* 523 U.S. 833, 846-47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *Burton v. Richmond,* 370 F.3d 723, 729 (8th Cir. 2004). [*Koscielski, supra* at 902 (emphasis added).]

In *United Artists Theatre Circuit, Inc v Twp of Warrington, PA,* 316 F3d 392 (CA 3, 2003), Judge (now Justice) Samuel A. Alito held that the proper standard for evaluating the substantive due process claim was whether the supervisors' actions (allegedly delaying approval of a proposed theater development so that the township could obtain an impact fee offered by a competing developer) shocked the conscience.

In *Co Concrete Corp v Roxbury Twp,* 442 F3d 159, 170 (CA 3, 2006), the plaintiffs argued that the township impeded their efforts to expand their sand and gravel extraction business "through false accusations, verbal disparagement and the imposition of illegal conditions and restrictions on their business in violation [of] a 1993 agreement." It was allegedly "[o]n the heels" of this animus between the appellants and the township that the township enacted an ordinance rezoning the plaintiffs' land from industrial to rural residential or open space. *Id.* The plaintiffs alleged that the only motivation for enacting an ordinance was to rezone the plaintiffs' property, constituting an improper use of the zoning authority. The land had been zoned industrial for almost 50 years, and the rezoning action was alleged

to have been taken with the knowledge that it would violate the plaintiffs' legal and contractual rights, and with the desire to prevent the plaintiffs from operating their business. *Id.* The United States Court of Appeals for the Third Circuit concluded that the plaintiffs had sufficiently *alleged* a claim of substantive due process violations, providing that they " 'had the right to be free from harassment in [its] land development efforts.' " *Id.* (citation omitted). However, *Co Concrete Corp* relied on *Blanche Road Corp v Bensalem Twp*, 57 F3d 253, 258 (CA 3, 1995), which applied a lower standard than the "shocks the conscience" test and was abrogated on that ground. *United Artists Theatre Circuit, Inc, supra* at 400 (holding that *Blanche Road Corp* applied the "improper motive" test and, therefore, could not be reconciled with the "shock the conscience" test applied in *Lewis, supra* at 847).

In *Uhlrig v Harder*, 64 F3d 567, 573 (CA 10, 1995), the panel noted that "the standard for judging a substantive due process claim is whether the challenged government action would shock the conscience of . . . judges." (Quotation marks and citations omitted.) The panel further stated:

> [T]o satisfy the "shock the conscience" standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. The level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct. We do know, however, that the "shock the conscience" standard requires a high level of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than

an ordinary tort . . . . [*Id.* at 574, citing *Collins v City of Harker Hts, Texas*, 503 US 115, 128; 112 S Ct 1061; 117 L Ed 2d 261 (1992).]

"The Due Process Clause 'is not a guarantee against incorrect or ill-advised [governmental] decisions.' " *Collins, supra* at 129 (citation omitted).[2]

---

[2] It is also worth noting that even a violation of state law relating to land use planning (such as a supervisor's discharging a planning commission member without approval from the township board of trustees) does not necessarily constitute a substantive due process violation. In *Eichenlaub v Indiana Twp*, 385 F3d 274 (CA 3, 2004), the plaintiffs asserted that zoning officials refused certain permits and approvals and applied unnecessary enforcement actions and subdivision requirements to the plaintiffs' property that were not applied to other parcels. The plaintiffs alleged that "zoning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the Eichenlaubs." *Id.* at 286. The panel noted that such complaints were "examples of the kind of disagreement that is frequent in planning disputes." *Id.* The panel distinguished a zoning dispute with the kind of gross misconduct that would shock the conscience as cases involving claims of unconstitutional taking without just compensation or an improper seizure in violation of the Fourth Amendment. *Id.* at 285, citing *Conroe Creosoting Co v Montgomery Co*, 249 F3d 337, 340 (CA 5, 2001) (allegation that "officials fraudulently converted a tax levy for a $75,000 deficiency into an unauthorized seizure and forced sale and destruction of an $800,000 ongoing business").

In *Eichenlaub*, Judge Michael Chertoff wrote: "[E]very appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but it is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983." *Eichenlaub, supra* at 286, quoting *United Artist Theatre Circuit, Inc, supra* at 402, quoting *Creative Environments, Inc,* 680 F 2d 822, 833 (CA 1, 1982) (internal quotation marks omitted).

In *PFZ Properties, Inc v Rodriguez*, 928 F2d 28, 32 (CA 1, 1991), the United States Court of Appeals for the First Circuit rejected a substantive due process claim arising from land use planning, after construction

There are decisions from sister states applying the "shocks the conscience" test to land use planning disputes. In *Plemmons v Blue Chip Ins Services, Inc*, 387 NJ Super 551; 904 A2d 825 (2006), the court held that actions by Shirley Himmelman, the chairperson of the borough of Audubon's zoning and planning board, and by the borough secretary that delayed the plain-

plans for a residential and tourist project in Puerto Rico were denied. The court stated:

> This Court has repeatedly held . . . that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. The doctrine of substantive due process "does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents 'governmental power from being used for purposes of oppression,' or 'abuse of government power that shocks the conscience,' or 'action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests.'" [*Id.* at 31-32 (citations omitted).]

The panel further reasoned:

> [W]e hold that PFZ's allegations that ARPE [Regulations and Permits Authority of the Commonwealth of Puerto Rico] officials failed to comply with agency regulations or practices in the review and approval process for the construction drawings are not sufficient to support a substantive due process claim under the Fourteenth Amendment to the United States Constitution. *See Amsden v. Moran*, 904 F.2d 748, 757 (1st Cir. 1990) (noting that *"even bad faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process"*), *cert. denied*, [498] U.S. [1041], 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). Even assuming that ARPE engaged in delaying tactics and refused to issue permits for the Vacia Talega project based on considerations outside the scope of its jurisdiction under Puerto Rico law, such practices, without more, do not rise to the level of violations of the federal constitution under a substantive due process label. [Emphasis added.]

tiff's (a property owner's) efforts to convert property from residential to commercial uses did not constitute "egregious official conduct" that "shocked the conscience," *id.* at 569, and thus the plaintiff did not have a substantive due process claim under § 1983 against such officials for damages that occurred to the property as a result of a storm and construction delays. Himmelman had only notified Robert Scouler, the borough inspector, that the owner was apparently engaged in unlawful construction work. There was no evidence that the board's delay in approving the site plan departed from its general practice, or that the owner demanded timely issuance of a resolution memorializing the site plan approval. When Claire Remenicky, Scouler's secretary, failed to provide the owner with a new construction permit application, she was only complying with Scouler's directions, and there was no evidence that Remenicky was aware that Scouler was pursuing some nefarious objective. The appellate court affirmed the trial court's summary judgment for the municipal defendants (the borough, Himmelman, and Remenicky). *Plemmons* acknowledged that "[t]he [federal] Courts of Appeals have routinely utilized the "shocks the conscience" test in reviewing claims that the actions of officials responsible for passing upon land use and other related applications were so egregiously arbitrary that they violated a property owner's substantive due process rights." *Plemmons, supra* at 568.

It is worth noting that a developer does not always have a protected property interest in a particular outcome of land use planning.[3] As indicated in *Aegis of*

---

[3] *RRI Realty Corp v Incorporated Village of Southampton*, 870 F2d 911 (CA 2, 1989) (the developer did not have a property interest protected by substantive due process in a building permit for the second stage of its mansion renovation project, because the local regulating body had discretion to deny such a permit).

*Arizona, LLC v The Town of Marana,* 206 Ariz 557, 568-569; 81 P3d 1016 (Ariz App, 2003), there must be a reasonable expectation of entitlement:

> "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of California, Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir. 1994). "A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.'" *Id., quoting Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972).
>
> Again, because only Marana's final decision denying the CUP [conditional use permit] application was subject to review in connection with Aegis's substantive due process claim, it is clear that Aegis could not have had a "reasonable expectation of entitlement" to have the CUP application granted. Although [Joel] Shapiro [Marana's then-acting planning director] supported the CUP application and recommended its approval, no evidence in the record shows that anyone on either the Planning and Zoning Commission or town council had told Aegis that the CUP application would be approved. Thus, once the application for the CUP was submitted, Aegis was subject to the inherently unpredictable and often politicized process of seeking permission from a local legislative body to conduct certain activity on a piece of property. In short, Aegis had no protected property interest in having its CUP application granted.

*Aegis of Arizona, LLC, supra* at 569, next considered the substantive due process claim under the "shocks the conscience" standard:

> Moreover, even if we assume, arguendo, that Aegis did have a protectable interest in the granting of the CUP, its substantive due process claim still fails. After determining that a party has a protectable property interest, the issue becomes, in the context of a § 1983 suit, whether any depri-

vation of that interest resulted from an abuse of governmental power of sufficient degree to be deemed a constitutional violation. *See Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1577 (11th Cir. 1989). In order to show a substantive due process violation, the abuse of governmental power must be one that "shocks the conscience." *United Artists Theatre Circuit, Inc. v. Township of Warrington,* 316 F.3d 392, 401 (3rd Cir. 2003) (holding that in the land-use context, substantive due process is violated only when government action "shocks the conscience"); *cf. County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (in context of search and seizure, substantive due process is violated only when the government's action shocks the conscience in a constitutional sense); *Eller Media Co. v. City of Tucson,* 198 Ariz. 127, ¶ 6, 7 P.3d 136, ¶ 6 (App. 2000) ([in case in which billboard company sought to enjoin city from enforcing outdoor lighting code prohibition against bottom-mounted illumination of billboards, alleging a valid nonconforming use and substantive due process violation] noting that substantive due process "precludes government conduct that shocks the conscience"); *Martin v. Reinstein,* 195 Ariz. 293, ¶ 66, 987 P.2d 779, ¶ 66 (App. 1999) (applying "shocks the conscience" standard in context of substantive due process claim challenging application of Sexually Violent Persons Act).

*Aegis of Arizona, LLC,* held that the trial court did not err in denying the plaintiff's motion for judgment as a matter of law.

California also applies the "shocks the conscience" standard. In *Clark v City of Hermosa Beach,* 48 Cal App 4th 1152, 1186; 56 Cal Rptr 2d 223 (1996), the court concluded that the developer did not have a protected property interest in the development project permits in question. The court also held that the city's action in allowing a particular council member with a conflict of interest to participate was not irrational or conscience-shocking:

In this case, regardless of whether the City Council's decision was proper under state law, we cannot say that its conduct, for due process purposes, was arbitrary or oppressive or that it "shocks the conscience." Although we have concluded that Councilmember [Robert] Benz had a conflict of interest in voting on the project, the city attorney advised the Council at the public hearing that there was no conflict. That advice was incorrect, but it was not irrational. In light of the city attorney's opinion, the Council did not act irrationally by allowing Benz to participate in the proceedings. [*Id.* at 1186.]

*Clark* further held: "the Council erred in considering and deciding issues raised for the first time after the public hearing was over. Further, it *may have* misconstrued or misapplied the provisions of the zoning ordinance concerning lot coverage and usable open space. Nonetheless, the Council's ultimate decision to deny the permits did not lack a rational basis." *Id.*

Massachusetts is deferential toward local land use planning bodies. In *K Hovnanian at Taunton, Inc v City of Taunton*, 37 Mass App Ct 639, 647; 642 NE2d 1044 (1994), the court stated:

Had Hovnanian asserted a specific property interest under State law, any arbitrary misapplication of that law reflected by the denial of the tie-in nevertheless does not involve procedural or substantive due process rights. *Rosenfeld v. Board of Health of Chilmark* [27 Mass App Ct 621, 627-628; 541 NE2d 375 (1989)]. "[T]he ordinary state administrative proceeding involving land use or zoning does not present [a violation of a Federal constitutional right], regardless of how disappointed the license or privilege seeker may feel at being . . . turned down." *Id.* at 628, 541 N.E.2d 375, quoting from *Creative Envts.* . . . See Bobrowski, Handbook of Massachusetts Land Use & Planning Law § 2.6.1 at 77 (1993 & Supp. 1994) ("The *Creative Environments* holding has led, in the First Circuit, to a long line of land use decisions rejecting the use of § 1983 actions.")] Moreover, we are not involved here with cor-

rupt or egregious conduct that so shocks the conscience as to give rise to a due process claim. See *Raskiewicz v. Town of New Boston*, 754 F.2d 38, 44 (1st Cir. [1985]), cert. denied . . . . *Rosenfeld v. Board of Health of Chilmark* [27 Mass App Ct 621, 628; 541 NE2d 375 (1989)].

*K Hovnanian at Taunton, Inc, supra* at 648, also noted that the developer had no constitutionally protected property interest in the approval of a subdivision plan:

Hovnanian's claim of a right to approval of its subdivision plan is similarly unavailing. This court held in *K. Hovnanian at Taunton, Inc. v. Planning Bd. of Taunton*, 32 Mass.App.Ct. [480] 485-486, 590 N.E.2d 1172 [1992], that the decision of the Taunton planning board to reject Hovnanian's subdivision plan was correct given the failure of the plan to comply with the board's regulations and the absence of approval by the Taunton board of health based upon the unavailability of a sewer tie-in. It is significant that with respect to the absence of the Taunton board of health approval, this court, in effect, indicated that administrative discretion was not involved. We concluded that "the planning board had no choice but to disapprove the plans (plans. . . .") *Id.* at 486, 590 N.E.2d 1172. In any event, no "property" interest is involved in the approval of a subdivision plan. *Cote v. Seaman*, 625 F.2d 1, 2 (1st Cir. 1980). *Rosenfeld v. Board of Health of Chilmark, supra* 27 Mass.App.Ct. at 627, 541 N.E.2d 375 [1989]. The existence of such an interest is "a necessary prerequisite to a fourteenth amendment due process claim." *Cote v. Seaman, supra* at 2.[4]

Pennsylvania also gives deference to local planning officials. In *Anselma Station, Ltd v Pennoni Assoc, Inc*, 654 A2d 608, 614-615 (Pa Commw Ct, 1995), the defendants were township engineers who advised the

---

[4] Similarly, here, it might be said that plaintiff did not have a reasonable expectation of *entitlement* to plan approval, where the site planning documents (such as the master deed) did not provide for a commercial use (a use of right), but more of a residential use.

township to delay development of a site until pollution could be remediated. The court applied the "shocks the conscience" standard.

Here, plaintiff has not presented evidence of any conduct by township officials that is so outrageous or arbitrary as to shock the conscience. Rather, the evidence indicated conduct intended to further the legitimate land use planning interests of the township (maintaining the integrity of the commercial zone in the village, and furthering the vitality of the village's commercial center). Therefore, the trial court did not err in rejecting the substantive due process claim.

c

Next, we consider the procedural due process claim. Plaintiff argues that the trial court applied an incorrect legal standard when it held that plaintiff had failed to prove that Webster had a personal pecuniary interest in the outcome of the township's land use planning proceedings. We disagree.

Procedural due process serves as a limitation on governmental action and requires a government to institute safeguards in proceedings that might result in a deprivation of life, liberty, or property. *Kampf v Kampf,* 237 Mich App 377, 382; 603 NW2d 295 (1999). Procedural due process generally requires notice, see *In re Nunn,* 168 Mich App 203, 208-209; 423 NW2d 619 (1988), an opportunity to be heard, *Traxler v Ford Motor Co,* 227 Mich App 276, 288; 576 NW2d 398 (1998), before an impartial trier of fact, *Newsome v Batavia Local School Dist,* 842 F2d 920, 927 (CA 6, 1988), and a written, although relatively informal, statement of findings, *Verbison v Auto Club Ins Ass'n,* 201 Mich App 635, 641; 506 NW2d 920 (1993). In other words, procedural due process requires that a party be

provided notice of the nature of the proceedings and an opportunity to be heard by an impartial decision maker at a meaningful time and in a meaningful manner. *Reed v Reed,* 265 Mich App 131, 159; 693 NW2d 825 (2005).

Logically, where a governmental actor has a personal pecuniary interest in the outcome of proceedings, he might not be an impartial decision maker. See, e.g., *Connally v Georgia,* 429 US 245; 97 S Ct 546; 50 L Ed 2d 444 (1977) (due process violated when a justice of the peace personally received $5 for each search warrant he issued, collected nothing when he denied a warrant, and had no other salary); *Gibson v Berryhill,* 411 US 564; 93 S Ct 1689; 36 L Ed 2d 488 (1973) (due process violated when members of a board with the power to bar optometrists from practice had their own private practices in competition with those who came before the board); compare *Alpha Epsilon Phi Tau Chapter Housing Ass'n v City of Berkeley,* 114 F3d 840, 845 (CA 9, 1997) (Byron R. White, retired associate justice of the United States Supreme Court, sitting by designation, held that a rent board's dual role as adjudicator and as executive body funded by its own registration fees did not render it a biased decision maker so as to violate due process).

In *DeBlasio v Zoning Bd of Adjustment for Twp of West Amwell,* 53 F3d 592 (CA 3, 1995), overruled on other grounds by *United Artists Theatre Circuit, Inc v Twp of Warrington, Pennsylvania,* 316 F3d 392, 400 (CA 3, 2003), the court held that New Jersey provided full judicial process for challenging adverse zoning decisions, thus precluding relief on a landowner's procedural due process claim, but a genuine issue of material fact existed regarding whether the ZBA's decisions were influenced by the ZBA secretary's personal financial interest in resolution of the landowner's zoning problems. See also *Spokane Co Legal Services, Inc v Legal*

*Services Corp,* 614 F2d 662 (CA 9, 1980) (the plaintiffs were not denied procedural due process in the action taken by the Legal Services Corporation to terminate financial support for their programs, even though the Legal Services Corporation appointed the special assistant to its president to conduct the hearing on the proposed transfer of funding; *there was no suggestion that the hearing examiner had* any personal bias or animosity against the plaintiffs or had *a pecuniary interest in the controversy,* and the appointment of a Legal Services Corporation employee to conduct the hearing was specifically authorized by federal regulation).

In light of the fact that having a personal pecuniary interest in the outcome of the land use planning proceedings would indicate a lack of an objective decision maker, it was logical for the trial court to conclude that *not* having such an interest (and not being motivated by such an interest) would point to the existence of an objective decision maker, and to the lack of merit of a procedural due process claim. Accordingly, it was not erroneous for the trial court to use, as part of its *ratio decidendi* in resolving that claim, the factual finding that plaintiff failed to prove that Webster had a personal pecuniary interest in the outcome of the planning process.

B

Next, plaintiff argues that the trial court erred when it held that the township officials' actions that the trial court found were wrongful were excused for purposes of 42 USC 1983 because the trial court believed that such officials acted in a way that they may have perceived to be in the best interest of the township. We disagree.

1

Following a bench trial, this Court reviews the trial court's conclusions of law de novo, and its findings of fact for clear error. *Ligon, supra* at 124. Questions of law are reviewed de novo. *Morden, supra* at 340.

2

Plaintiff argues that the township officials' actions are attributable to the township because the actions were taken pursuant to a custom or policy of the township or under color of law, citing *Monell, supra* at 690. This argument lacks merit.

Plaintiff's argument regarding attribution is beside the point. The trial court never concluded that the township officials' actions were not attributable to the township. The trial court simply used, as part of its reasoning for denying parts of the procedural due process claim, its conclusions of fact (1) that Webster did not have a personal pecuniary interest in the outcome of the land use planning proceedings and (2) that Webster's conduct was not motivated by personal pecuniary interest. Plaintiff does not challenge these conclusions of fact on appeal; therefore, they must be accepted.

The only authority cited by plaintiff, *Monell*, does not show that the trial court erred as a matter of law by considering as relevant its findings regarding Webster's lack of personal pecuniary interest and lack of motive to further a personal pecuniary interest. Therefore, no error can be found under this issue on appeal.

C

Next, plaintiff argues that the trial court erred by reviewing, for purposes of the § 1983 claim, only se-

lected instances of conduct from the evidence presented at trial and then viewing those limited instances in isolation. We disagree.

In this argument section, plaintiff argues that the trial court reached an erroneous factual conclusion regarding all its remaining claims. But plaintiff does not identify the allegedly erroneous factual conclusion. Also, plaintiff fails to argue that any factual finding by the trial court was *clearly* erroneous. Therefore, the trial court's factual findings must be accepted.

Plaintiff argues that the trial court addressed only limited instances of the defendants' actions in isolation, citing *Bynum v ESAB Group, Inc*, 467 Mich 280; 651 NW2d 383 (2002), for the proposition that the record should have been viewed as a whole. Plaintiff argues in this section that Webster acted improperly in terminating Hermann as the planning commission chairman. This argument lacks merit.

The trial court found that although Webster acted improperly in terminating Hermann as a planning commission member, "plaintiff has failed to meet its burden of proof that Mr. Hermann's departure proximately caused the result it complains of," pointing out that the planning commission's vote against plaintiff's development was five to zero, and that the ZBA's relevant vote was also five to zero. This conclusion is sound.

Proximate cause is an essential element of a § 1983 claim. *Morden, supra* at 335 ("Plaintiff's theory of causation is also insufficient as a matter of law to establish the requisite proximate cause for a § 1983 claim."), citing *Horn v Madison Co Fiscal Court*, 22 F3d 653, 659 (CA 6, 1994) ("proximate causation is an essential element of a § 1983 claim for damages"). Proximate cause has, in turn, two components.

" 'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause." *Craig v Oakwood Hosp* 471 Mich 67, 86; 684 NW2d 296 (2004). Cause in fact requires the plaintiff to show that but for the defendant's actions, the injury would not have occurred, while legal or proximate cause normally involves examining the foreseeability of consequences. *Id.* at 86-87. Cause in fact requires more than a possibility of causation:

> It is important to bear in mind that a plaintiff cannot satisfy this burden by showing only that the defendant *may* have caused his injuries. Our case law requires more than a mere possibility or a plausible explanation. Rather, a plaintiff establishes that the defendant's conduct was a cause in fact of his injuries only if he sets forth specific facts that would support a reasonable inference of a logical sequence of cause and effect. A valid theory of causation, therefore, must be based on facts in evidence. And while the evidence need not negate all other possible causes, . . . [it must] exclude other reasonable hypotheses with a fair amount of certainty. [*Id.* at 87-88 (emphasis in original; quotation marks and brackets omitted).]

Speculation in proving causation is prohibited, e.g., *Skinner v Square D Co,* 445 Mich 153, 166, 516 NW2d 475 (1994); *Ensink v Mecosta Co Gen Hosp,* 262 Mich App 518, 524-525; 687 NW2d 143 (2004), even on a statutory claim, *McManamon v Redford Charter Twp,* 273 Mich App 131, 139; 730 NW2d 757 (2006) (claim under the Employee Right to Know Act). The proof must " 'amount to a reasonable likelihood . . . rather than a possibility. The evidence need not negate all other possible causes, but . . . must exclude other reasonable hypotheses with a fair amount of certainty.' " *Skinner, supra* at 166 (citation omitted).

Plaintiff's implied[5] argument that Webster's improper removal of Hermann caused the rejection of its development plan amounts to speculation and conjecture because it does not exclude other possibilities to a reasonable degree of certainty. See *Wiley v Henry Ford Cottage Hosp,* 257 Mich App 488, 496; 668 NW2d 402 (2003). The removal of Hermann from the planning commission did not likely make a difference in the outcome of the planning commission's vote, because a planning commission majority would still have existed for disapproval of the development plan, unless Hermann's presence and advocacy would have swayed a sufficient number of the other members of the commission. But there was no evidence to that effect.

In short, the trial court did not view certain instances of conduct in isolation. It considered whether the improper termination of Hermann could have been a cause in fact of the rejection of the development plan, and found a lack of evidence in support of the required proof of causation in fact. Therefore, no error can be assigned here.

---

[5] Plaintiff does not even expressly address causation in fact. Other than essentially to plead for a rule requiring that such causation need not be proved, arguing that it would be too difficult to prove, because township officials would never admit that they would have approved the development plan if Hermann had not been removed from the planning commission. Plaintiff argues: "Plaintiff was only required to show that the project was an allowed use under the Ordinance . . . .

The trial court imposed an impossible requirement . . . that Plaintiff was required to elicit from the wrongdoers that the project would have been approved because they had violated the law and would have changed their votes. If this standard were imposed, no 1983 claim would ever succeed." Plaintiff's complaint, that a number of § 1983 claims fail because of the difficulty in proving causation, notwithstanding, causation is, nevertheless, an essential element of a § 1983 claim. *Morden, supra* at 335; *Horn, supra* at 659.

D

Plaintiff next argues that the trial court committed error requiring reversal when it rejected plaintiff's claim for violation of § 1983 because the members of the planning commission voted five to zero against plaintiff's project and would not admit their wrongdoing or intimidation at trial. Again, we disagree.

The gist of plaintiff's argument is undeveloped, but it appears to repeat the argument that plaintiff should not be required to prove causation. As noted above, however, proximate causation is an essential element of a § 1983 claim. *Morden, supra* at 335; *Horn, supra* at 659. Because plaintiff cites no authority for its argument, we reject it as abandoned on appeal. *Etefia v Credit Technologies, Inc,* 245 Mich App 466, 471; 628 NW2d 577 (2001). An appellant may not merely announce its position and leave it to this Court to discover and rationalize the basis for its claims. *In re Petition by Wayne Co Treasurer for Foreclosure of Certain Lands for Unpaid Prop Taxes,* 265 Mich App 285, 299-300; 698 NW2d 879 (2005). This Court is not required to search for authority to sustain or reject a position raised by a party without citation of authority. *In re Reisman Estate,* 266 Mich App 522, 533; 702 NW2d 658 (2005); *Peterson Novelties, Inc v City of Berkley,* 259 Mich App 1, 14; 672 NW2d 351 (2003). "It is not enough for an appellant in his brief simply to . . . assert an error and then leave it up to this Court to . . . unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959). See, generally, *Derderian v Genesys Health Care Systems,* 263 Mich App 364, 388; 689 NW2d 145 (2004).

Plaintiff argues that the trial court erred by dismissing plaintiff's claim seeking declaratory relief and its taking and promissory estoppel claims. We disagree.

Plaintiff first argues that the trial court erred in dismissing its inverse condemnation claim. This issue is not contained in the statement of questions presented; it is therefore deemed abandoned. *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 553; 730 NW2d 481 (2007), citing MCR 7.212(C)(5). Also, plaintiff fails to cite authority for this position, and the issue is therefore deemed abandoned. *Etefia, supra* at 471.

Next, plaintiff argues that the trial court erred in dismissing its claim for declaratory relief. But, declaratory relief is a remedy (equitable in nature,[6] because it is not a damages remedy), *Sturm, Ruger & Co, Inc v Occupational Safety & Health Admin*, 186 F3d 63, 64 (CA 1, 1999) ("declaratory relief is a remedy committed to judicial discretion and . . . the exercise of that discretion is properly informed by considerations of equitable restraint" [quotation marks and citation omitted]), not a claim. Therefore, the trial court did not dismiss any such claim.

In addition, all claims other than the damages claims were resolved by the partial consent judgment. Therefore, the trial court did not err in considering the request for declaratory relief to be moot. See *Ewing v Bolden*, 194 Mich App 95, 104; 486 NW2d 96 (1992).

---

[6] E.g., *East Bay Muni Utility Dist v Dep't of Forestry & Fire Protection*, 43 Cal App 4th 1113, 1121; 51 Cal Rptr 2d 299 (1996) (noting that declaratory relief is an equitable remedy and that it is often sought as a cumulative remedy in conjunction with requests for injunctive relief and mandamus). On questions of state law, Michigan courts are not bound by foreign authority, *Campbell v Kovich*, 273 Mich App 227, 231; 731 NW2d 112 (2006), but may find it persuasive, *Ammex, Inc v Dep't of Treasury*, 273 Mich App 623, 639 n 15; 732 NW2d 116 (2007).

Next, plaintiff argues that the trial court erred in "dismissing" its taking claim. We disagree. Although plaintiff cites *Penn Central Transportation Co v New York City*, 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978), plaintiff provides no analysis for this argument, merely stating, conclusorily, that "Plaintiff's reasonable investment-backed expectations (per the Ordinance) were denied due to Defendants' conduct." Plaintiff dedicates only one sentence in a 50-page brief to analysis of alleged error in rejecting the taking claim.

Further, plaintiff makes a more fundamental error in its characterization of and challenge to the trial court's decision. The trial court did not "dismiss" the taking claim. The taking claim was tried. In its verdict (or "decision after trial"), the trial court found no cause of action on the taking claim. The decision after trial concluded that "there was no unconstitutional temporary taking of the plaintiff's property" and "no cause for action for damages."

Plaintiff points to no basis on which the trial court's finding of no temporary taking was erroneous as a matter of law. Rather, plaintiff essentially challenges the trier of fact's conclusion that no taking occurred, stating that "the conduct discussed above should have been sufficient to establish the elements of Plaintiff's taking claim . . . ." An appellant cannot challenge a verdict's merits as such; an appellant must either show that the verdict was against the great weight of the evidence (which plaintiff does not argue), or that after a bench trial the trial court's findings of fact were clearly erroneous, or that its conclusions of law were legally erroneous. *Ligon, supra* at 124. With regard to the taking claim, plaintiff makes none of these arguments. Therefore plaintiff's assigned error regarding the taking claim must fail.

Plaintiff also argues that the trial court erred in "dismissing" its promissory estoppel claim. However, plaintiff cites no authority for this argument. Therefore, it is deemed abandoned on appeal. *Etefia, supra* at 471.

III

(1)(a) The trial court did not err in rejecting the substantive due process claim, because plaintiff failed to show evidence that defendants' behavior was so arbitrary as to shock the conscience. (b) The trial court did not apply an incorrect legal standard to plaintiff's procedural due process claim, because whether an official has a personal pecuniary interest in the outcome of a matter is relevant to whether there was an objective decision maker. (2) Plaintiff has failed to show that the trial court erred as a matter of law in considering as relevant its findings regarding Webster's lack of personal pecuniary interest and lack of motive to further a personal pecuniary interest. (3) The trial court did not view certain instances of conduct in isolation; it considered whether the improper termination of Hermann could have been a cause in fact of the rejection of the development plan, and found a lack of evidence of causation in fact. (4) The trial court did not err as a matter of law in considering that the planning commission voted five to zero against plaintiff's preliminary development plan. (5) (a) Plaintiff abandoned its claim that the trial court erred in dismissing its inverse condemnation claim. (b) The trial court did not dismiss a claim for declaratory relief; declaratory relief is a remedy, not a claim. (c) The trial court did not err in finding no cause for action on the temporary taking claim.

Affirmed.