# STATE OF MICHIGAN

# COURT OF APPEALS

INTERNATIONAL OUTDOOR, INC.,

Plaintiff-Appellant,

v

CITY OF HARPER WOODS,

Defendant-Appellee.

UNPUBLISHED
August 16, 2016

No. 325469
Wayne Circuit Court
LC No. 14-008545-AA

AFTER REMAND

Before: JANSEN, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

This case returns to us after remand to the Harper Woods Board of Zoning Appeals (BZA) to develop the record related to its factual findings and reasoning for its decision to deny plaintiff's applications for special permits. See *Int'l Outdoor, Inc v Harper Woods*, unpublished order of the Court of Appeals, entered April 26, 2016 (Docket No. 325469). We previously determined that the BZA failed to make factual findings on the record or explain its reasoning for denying plaintiff's applications for special permits. *Int'l Outdoor, Inc v Harper Woods*, unpublished opinion per curiam of the Court of Appeals, issued April 26, 2016 (Docket No. 325469), p 7. We therefore remanded the case to the BZA in order for the BZA to develop the record related to its factual findings and reasoning. *Id*. Because we conclude that the BZA properly articulated the factual findings and reasoning supporting its decision in accordance with our order, we affirm.

As we stated in our prior opinion, "This Court reviews de novo a trial court's decision in an appeal from a city's zoning board, while giving great deference to the trial court and zoning board's findings." *Norman Corp v East Tawas*, 263 Mich App 194, 198; 687 NW2d 861 (2004). In addition, we review de novo the application and interpretation of an ordinance. *Bonner v Brighton*, 495 Mich 209, 221-222; 848 NW2d 380 (2014). "The decision of a zoning board should be affirmed by the courts unless it is (1) contrary to law, (2) based on improper procedure, (3) not supported by competent, material, and substantial evidence on the record, or (4) an abuse of discretion." *Reenders v Parker*, 217 Mich App 373, 378; 551 NW2d 474 (1996). A decision constitutes an abuse of discretion when it falls outside the range of principled outcomes. See *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). "Substantial evidence is

-1-

evidence that a reasonable person would accept as sufficient to support a conclusion. While this requires more than a scintilla of evidence, it may be substantially less than a preponderance." *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 340-341; 810 NW2d 621 (2011) (citation and quotation marks omitted).

I.

Plaintiff contends that the BZA's decision was based on improper procedure. We disagree.

Plaintiff first contends that it was not notified of the June 8, 2016 meeting, during which the BZA adopted its findings of fact and conclusions of law. Plaintiff further argues that it did not have the opportunity to be heard at the June 8, 2016 meeting. Due process generally requires notice regarding the nature of the proceedings, the opportunity to be heard in a meaningful time and manner, and a decision by an impartial decisionmaker. *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995). Assuming that plaintiff was not notified of the June 8, 2016 meeting, the lack of notice did not deprive plaintiff of its right to due process. The June 8, 2016 meeting was a regular BZA meeting, and plaintiff does not contend that there was no public notice of the meeting. Instead, plaintiff contends that it was not directly notified of the June 8, 2016 meeting.

However, plaintiff had notice of the March 12, 2014 meeting, and plaintiff's representatives argued and presented evidence during that meeting. Our remand order provided that the BZA must "develop the record related to its factual findings and reasoning for its decision to deny plaintiff's application for a special permit under defendant's sign ordinance." *Int'l Outdoor, Inc v Harper Woods*, unpublished order of the Court of Appeals, entered April 26, 2016 (Docket No. 325469). Therefore, the proceedings on remand to the BZA were limited to articulating the factual findings and conclusions supporting the BZA's decision to deny the special permits. This Court did not direct the BZA to take additional evidence or to reconsider its decision. Even if plaintiff appeared at the meeting, it would not have been able to make any additional arguments or present any additional evidence. Instead, the BZA merely stated the basis for its earlier decision. Thus, even assuming plaintiff did not receive direct notice of the subsequent BZA meeting, the lack of notice or an opportunity to be heard did not deny plaintiff its right to due process because plaintiff already received notice and the opportunity to be heard during the March 12, 2014 meeting, and the BZA had already reached its decision in the case.

Plaintiff relies on *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 693 NW2d 170 (2005), in support of its position that the BZA did not employ adequate procedures. However, this case is distinguishable from *Polkton* because the issue of due process was not raised in *Polkton*, and this Court did not discuss whether the zoning board of appeals in that case employed proper procedures. See *id*. at 90-104.

Plaintiff also cites *Sitz v Gen Motors Corp*, 24 Mich App 119; 179 NW2d 675 (1970), in support of its position. In *Sitz*, the city of Wyoming's zoning board held a public meeting regarding applications to obtain a special use permit and waivers of set-back requirements. *Sitz*, 24 Mich App at 120-121. The zoning board held a public hearing, in which minutes were taken and recorded. *Id*. at 121. The meeting was adjourned before a decision was made. *Id*. Later

-2-

that day, a private meeting was held with five of the seven board members in attendance. *Id*. The board members discussed the issue and passed a resolution authorizing the special use and variance. *Id*. at 121-122. There were no minutes corresponding with the second meeting. *Id*. at 122. Several months later, the attorney for the city prepared minutes of the second meeting after discussing the meeting with several board members. *Id*. This Court concluded that the meeting minutes and findings of fact were "late and irregular," and determined that the circuit court's decision to affirm the zoning board's decision on the basis of the late and irregular meeting minutes and findings of fact violated the plaintiffs' due-process rights. *Id*. at 129-130. Accordingly, this Court remanded the case for a hearing in order for the zoning board to timely record minutes of the proceedings and findings. *Id*. at 129.

In contrast, in this case, this Court remanded the case to the BZA in order for the BZA "to develop the record related to its factual findings and reasoning for its decision to deny plaintiff's application for a special permit." *Int'l Outdoor, Inc v Harper Woods*, unpublished order of the Court of Appeals, entered April 26, 2016 (Docket No. 325469). The BZA held a public meeting and adopted the findings of fact and conclusions of law during the meeting. The corresponding meeting minutes reflect that the BZA adopted the findings of fact and conclusions of law. Thus, this case differs from *Sitz* because the BZA held a public meeting, during which it adopted the findings of fact and conclusions of law, and the contemporaneous meeting minutes reflect the actions taken at the meeting. See *Sitz*, 24 Mich App at 129-130.[1]

Plaintiff further contends that the BZA's procedures violated § 10-830 of defendant's Zoning Ordinance. Section 10-830 provides, in part:

> A notice of the time, place and purpose of a hearing shall be published in a newspaper having general circulation in the City and shall be sent by mail or personal delivery to the person requesting the interpretation, variance, or appeal of an administrative decision not less than 15 days before the public hearing. [Harper Woods Zoning Ordinance, § 10-830.]

Assuming that the BZA did not send notice to plaintiff, its conduct nevertheless did not violate § 10-830. As stated above, our remand order was limited to development of the record related to the BZA's factual findings and reasoning for its decision. *Int'l Outdoor, Inc v Harper Woods*, unpublished order of the Court of Appeals, entered April 26, 2016 (Docket No. 325469). Plaintiff does not contend that it lacked notification of the March 12, 2014 BZA meeting, and plaintiff's representatives appeared and argued during the March 12, 2014 meeting. The BZA's task during the subsequent meeting was limited to articulating its factual findings and conclusions regarding its decision to deny the special permits for the two signs. Accordingly, we conclude that the BZA satisfied the requirement in § 10-830 by notifying plaintiff of the March 12, 2014 meeting. See Harper Woods Zoning Ordinance, § 10-830.

---

[1] Furthermore, *Sitz* is not binding precedent because it was decided before November 1, 1990. See MCR 7.215(J)(1); *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

Because our remand order was limited to developing a record of the BZA's factual findings and reasoning, we conclude that the BZA's procedure with regard to the June 8, 2016 meeting was sufficient to satisfy due process, defendant's ordinances, and our order. However, we note that a similar procedure would not have been sufficient if the BZA had heard new evidence or considered additional facts. In that situation, the BZA would be required to give the party seeking the variance or special permit notice and an opportunity to be heard. See *Cummings*, 210 Mich App at 253. Accordingly, we caution the BZA that most situations will require notice to the party seeking the variance or special permit and an opportunity to be heard.

Plaintiff also contends that the BZA's decision was based on improper procedures because defendant provided plaintiff with variance application forms, rather than applications for special permits, before the March 12, 2014 BZA meeting. Plaintiff argues that it was told that it had to meet one set of standards, but then the BZA applied a different set of standards. We conclude that this claim is abandoned because plaintiff did not raise it in its statement of the questions presented or in the argument section of its initial brief on appeal. See *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008) (noting that the issue was not contained in the statement of the questions presented and was therefore deemed abandoned); *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999) (explaining that "where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned").

However, we also note that plaintiff received notice of the proper standard. Lyn Giera, the building inspector, sent letters to plaintiff following the denial of the sign permits, in which Giera stated that plaintiff has "the right *under Section 21-15* to appeal the denial of the permit(s)." (Emphasis added.) Giera also attached the pertinent ordinance sections to the letters. Thus, plaintiff knew the standard under which the BZA would review the denial of the sign permit requests, and its argument that it was unware of the proper standard is without merit. Furthermore, the variance standards outlined in § 10-841 of the Harper Woods Zoning Ordinance are similar to the standards for issuing a special permit outlined in § 21-15(d) of the Harper Woods Ordinances, and plaintiff does not state what additional information it would have provided if it argued the issue under the standards outlined in § 21-15(d)(1). Harper Woods Zoning Ordinance, § 10-841; Harper Woods Ordinances, § 21-15(d).

Plaintiff further contends that the BZA did not provide it with the McKenna reports corresponding with the billboards, and plaintiff was therefore unable to respond to the McKenna reports. However, plaintiff abandoned the issue by failing to raise it in its statement of the questions presented in its initial brief on appeal and by failing to address the issue in its argument section in its initial brief on appeal, *Mettler Walloon, LLC*, 281 Mich App at 221; *Prince*, 237 Mich App at 197, and, because of this, we are not prepared to say that plaintiff was entitled to the reports. As discussed above, the scope of the remand was limited to the BZA articulating the factual findings and conclusions of law supporting its decision. We conclude that the BZA did not deprive plaintiff of its right to due process of law with regard to the June 8, 2016 meeting.[2]

---

[2] We conclude that plaintiff's argument regarding the qualifications of Patrick Sloan, the McKenna Associates planner who participated in preparing the McKenna reports, is without

-4-

II.

We also conclude that the BZA's decision was supported by competent, material, and substantial evidence in the record and did not constitute an abuse of discretion. Section 21-15(d) provides:

> The board may grant a special permit for a sign which does not comply with the provisions of this chapter if it determines that:
>
> (1) The particular sign will be in harmony with the general purpose and intent of this chapter;
>
> (2) The sign will not be injurious to the immediate neighborhood or adjacent land use;
>
> (3) The sign is sufficiently compatible with the architectural and design character of the immediate neighborhood;
>
> (4) The sign will not be hazardous to passing traffic or otherwise detrimental to the public safety and welfare. [Harper Woods Ordinances, § 21-15(d).]

With regard to § 21-15(d)(1), the BZA concluded that the requirement that the signs be in harmony with the general purpose and intent of the chapter was not met because "the large area, height and scale of the signs, combined with their close proximity to long-established residential areas of the city, will cause an annoyance and disturbance to city residents because city residents have become accustomed to size, height, placement, and quantity restrictions on signs." The BZA reasoned that one billboard will be visible from the residential areas to the east and south of the sign, from the residential neighborhood adjacent to Harper Avenue on the west side of I-94, and from the pedestrian bridge crossing over I-94 connecting both sides of Harper Avenue. The BZA also pointed out that the other billboard will be visible from residential neighborhoods to the north of the sign and adjacent to Harper Avenue on the west side of I-94, from the pedestrian bridge over I-94, from Salter Park, from a school and playground, and from Park Place Senior Apartments. The BZA relied on the McKenna reports, which found that the billboards would be visible from these areas. We conclude that the BZA's conclusion that the billboards would not meet the requirement in § 21-15(d)(1) was based on competent, material, and substantial evidence in the record, and it was not an abuse of discretion because it was based on the location of the sign relative to nearby areas.

With regard to § 21-15(d)(2), the BZA concluded that the billboards would degrade the character of the nearby residential areas because of the fact that the billboards would exceed the area limit by 236% and the height limit by 218%. The McKenna reports again support the BZA's findings regarding the size of the billboards and the effect on the residential areas. The

merit. Plaintiff's argument involves an unrelated case in which this Court made determinations regarding Sloan's qualifications. However, this Court's decision regarding Sloan's qualifications in an unrelated case have no bearing on this case.

BZA further concluded that the neighborhoods would be a less desirable place to live and raise a family because the billboards would be visible from the residential areas. The BZA's conclusion was again supported by the recommendation in the McKenna reports. The BZA's factual findings on this criterion were based on competent, material, and substantial evidence in the record, and the BZA's conclusion that the large billboards would degrade the character of the nearby areas and interfere with the ability to live and raise a family in the surrounding areas was not an abuse of discretion.

With regard to § 21-15(d)(3), the BZA found that the billboards would be incompatible with the established architectural and design character of the neighborhoods surrounding the billboards, as well as the city as a whole, based on the fact that the billboards would exceed the area limit by 236% and the height limit by 218%. The BZA noted that "[o]ver the last 52 years an architectural and design character of the immediate neighborhood and city as a whole became established due to the limitations placed on the height, area, placement, and quantity of allowable signage." The BZA's findings of fact on this issue were based on the McKenna reports, which came to the same conclusion. We therefore conclude that the findings were based on competent, material, and substantial evidence in the record. In addition, the BZA's conclusion did not constitute an abuse of discretion as the BZA considered the size of the billboards compared with the limitations on similar signs in the past.

Finally, with regard to § 21-15(d)(4), the BZA concluded that the two billboards "would be detrimental to the public welfare of Harper Woods due to the sign's [sic] height, area, placement, and quantity." The BZA explained that there was only one similar sign along I-94 in Harper Woods, while there were approximately 10 similar signs south of the Harper Woods city limit. The BZA again relied on the McKenna reports for this factual finding. The BZA reasoned that if it permitted these types of signs, there would be several large signs in Harper Woods similar to those found in Detroit south of the Harper Woods city limit. The BZA further explained that the secondary effects of the billboards included "visual clutter or pollution," "a location for graffiti," and interference with the sight lines of the residential neighborhoods. This finding is supported by a letter from the leasing agent for a company owning several nearby condominium units, in which the leasing agent requested that the application for one of the billboards be denied and reasoned that the billboard would serve as a location for graffiti and that the billboard would create light pollution that would shine into the condominium units while the tenants attempted to sleep.

The BZA further pointed out that plaintiff did not address the issue of the required distance from the intersection of Harper Avenue and Bournemouth Street with regard to one of the billboards, and that the design of the billboard could obstruct the visibility of a driver at the intersection and cause a risk to pedestrians and traffic. The BZA pointed out that the billboard violated the requirement for a clear vision zone triangle outlined in § 10-215 of the Harper Woods Zoning Ordinance, and the lack of a clear vision zone pursuant to the zoning ordinance constituted an impermissible risk to pedestrians and other travelers.[3] The BZA further found that

---

[3] Section 10-215 of the Harper Woods Zoning Ordinance provides, in part:

the billboards constituted a safety risk because the Harper Woods Fire Department does not have a ladder truck in the event of a fire. A letter from Giera, who also serves as the fire marshal, in which Giera noted that the two signs would be too high for the fire department to reach in the event of an emergency because the fire department did not have a ladder truck available to use, supported the BZA's decision. In addition, the property manager of a local condominium wrote a letter expressing that the residents of the condominium opposed the installation of a billboard near their homes because of the safety hazard presented by the inability of the fire department to address a fire on the billboard. Finally, the BZA concluded that plaintiff failed to address the maximum number of pole signs pursuant to § 21-5 of the Harper Woods Ordinances, which permits "[o]ne non-rotating ground pole sign . . . per street frontage of peripheral character." Harper Woods Ordinances, § 21-5. The BZA noted that each proposed site already had another ground pole sign. The McKenna reports also made the same factual findings and conclusions on this issue. Thus, there was competent, material, and substantial evidence supporting the BZA's decision that the two billboards would be hazardous to passing traffic or otherwise detrimental to the public safety and welfare. In addition, the BZA's conclusion of law with regard to § 21-15(d)(4) did not constitute an abuse of discretion.

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael J. Kelly

---

No structure, wall, fence, shrubbery or trees shall be erected, maintained or planted on any lot which will obstruct the visibility of the driver of a vehicle approaching an intersection, excepting that shrubbery and low retaining walls not exceeding two and one-half (2½) feet in height above the curb level and shade trees where all branches are not less than eight (8) feet above the street level will be permitted. For residential corner lots, this area of unobstructed visibility will be a triangular section of land formed by the two street curb lines and a line connecting them at points 30 feet from the intersection of said curb lines. [Harper Woods Zoning Ordinance, § 10-215.]