*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENDRA NICOLE MCMURPHY,

      Plaintiff-Appellee,

v

ALEXANDER PAZ,

      Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No. 366166
Oakland Circuit Court
LC No. 2014-826522-DS

Before: PATEL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

This appeal arises from a custody dispute between defendant, Alexander Paz, and plaintiff, Kendra McMurphy, over their minor child, KEP. Defendant appeals as of right the trial court's order denying his motion to modify custody. Finding no error requiring reversal, we affirm.

## I. BASIC FACTS

Plaintiff and defendant never married. They are the parents of KEP, who was born in 2013. At the time of the evidentiary hearing that took place in 2021 and 2022, KEP was eight or nine years old. The original custody judgment was entered in 2014 and awarded plaintiff sole legal and physical custody of the child. Parenting time for defendant was to "be by mutual agreement of the parties."

On March 4, 2020, the parties stipulated to entry of an order modifying custody and defendant's parenting time. Although the order was captioned as "temporary," no end date was provided in the order. "[U]ntil further Order of the Court," the parties were to share joint legal custody of KEP and defendant was allowed parenting time with KEP every Monday at 3:15 p.m. until Wednesday at 9:00 a.m., and every Friday from 4:15 p.m. until 8:00 p.m. The parties agreed

-1-

to undergo "complete psychological evaluations" with Dr. Gerald Shiener, who was to submit a recommendation for custody and parenting time.[1]

In November 2020, after KEP returned to plaintiff's care after spending Sunday with defendant, plaintiff noticed a mark on KEP's arm and suspected that defendant had physically abused the child. After consulting with Siri Gottlieb, a social worker who had been assisting the parties with custody and parenting-time concerns, plaintiff eventually contacted Children's Protective Services (CPS). Thereafter, without any explanation to defendant, plaintiff refused to allow defendant any parenting time. Defendant only learned of plaintiff's concerns after she filed a motion to modify custody. In her November 10, 2020 motion, plaintiff sought sole legal and physical custody of KEP. In communications with defendant, Siri[2] indicated that after talking with KEP, she did not suspect defendant of any wrongdoing. KEP had stated that a cousin caused the mark. CPS investigators determined that there was no preponderance of evidence of any abuse.

Shortly after, the parties met with Jan McCarron about working on a parenting-time plan going forward. The parties agreed that, starting in January 2021, plaintiff would have custody of KEP during the week and defendant would have parenting time on weekends, but the March 4, 2020 order was never modified to reflect this agreement. This arrangement lasted until June 2021, when KEP's school year ended and the parties agreed, without modifying the March 4, 2020 order, on an every-other-week schedule.

Plaintiff brought KEP up north the week before Father's Day. When defendant inquired about when KEP would be returning, plaintiff either gave no response or provided delayed, vague responses. On Saturday, June 19, 2021, plaintiff indicated that she and KEP would return at 12:30 p.m. the next day, which was Father's Day. However, at about 1:00 p.m. on Father's Day, plaintiff informed defendant that they would not be meeting and that he should instead expect a call from CPS.

Plaintiff alleged to CPS on June 15, 2021, that defendant had both sexually and physically abused KEP. Contemporaneously, plaintiff filed an ex parte motion to suspend defendant's parenting time. As part of the investigation, KEP participated in a forensic interview at Kids Talk. Although KEP said that defendant touched him inappropriately, the interviewer determined that the interview was inconclusive. The interviewer's report noted that the supervisor at Kids Talk had concerns that plaintiff was coaching KEP during the interview. Law enforcement officers who also witnessed the interview stated that it was inconclusive. Defendant also denied touching KEP inappropriately. As a result, CPS was unable to substantiate the allegations and the report was

---

[1] The evaluations were conducted, but the results of those evaluations and any custody recommendation were never submitted to the court during the evidentiary hearing on defendant's motion for sole custody. The referee denied plaintiff's request to admit Dr. Shiener's evaluation into evidence because, contrary to a discovery order that was entered as a sanction against plaintiff, plaintiff did not timely list it as an exhibit.

[2] To distinguish Siri Gottlieb from Lisa Gottlieb, see *infra*, we will utilize their first names.

closed on July 23, 2021. Relying on the fact that CPS did not substantiate the allegations, the trial court denied plaintiff's motion to suspend defendant's parenting time.

Plaintiff later conceded that her business partner's son sexually abused KEP in March or April 2020.[3]

During the July 21, 2021 hearing on plaintiff's motion for sole custody, the trial court noticed that the March 4, 2020 order was labeled a "temporary" order, but the parties had never submitted anything to make it "permanent." Therefore, the trial court decided to make the March 4, 2020 order a "permanent order . . . until there is a new motion based on a change in circumstances or proper cause to consider modification." Because plaintiff had deprived defendant of parenting time during this investigation, the trial court ordered make-up parenting time.

Having not seen KEP in the last 42 days, defendant elected to start his make-up parenting time immediately after the July 21 hearing. Plaintiff's counsel informed defendant that the pick-up would occur at the Bloomfield Township Police Station at 5:00 p.m. that day. After defendant arrived at the station, he learned that while police were aware of the previous allegations made against him, plaintiff had not informed them of the court order entered that day. After much disagreement between the parties, KEP eventually was released to defendant at approximately 8:00 p.m. that evening.[4]

On July 28, 2021, defendant filed an ex parte motion to suspend plaintiff's parenting time. Defendant alleged that plaintiff's behavior of again presenting the same unsubstantiated allegations of abuse to the police on July 21 was a blatant attempt to circumvent the court's clear order to facilitate make-up parenting time. The trial court denied defendant's motion because defendant failed to allege sufficient facts to demonstrate that irreparable injury, loss, or damage would result from the immediate denial of his motion.

The motion at the center of this appeal was filed by defendant on July 29, 2021. In that motion, defendant sought sole custody of KEP. Defendant claimed that plaintiff has a history of attempting to sabotage and disrupt the father-son relationship with KEP by utilizing alienation tactics. Defendant requested an evidentiary hearing on the matter. At the motion hearing, the trial court noted that any "changes in circumstances" were to be measured from the March 4, 2020 order. Regarding whether to hold an evidentiary hearing, the trial court stated:

---

[3] The record indicates that plaintiff's business partner also was her live-in romantic partner at the time.

[4] Bodycam video of a police officer's interactions with plaintiff was admitted into evidence. The trial court and referee both commented on the extent of plaintiff's and the officer's discussions of aspects of this case in front of KEP, which they found inappropriate.

So, I am going to grant the request for a hearing on parenting time and physical custody because I do think there's a change in circumstance which could lead to a modification of that.

I am going to deny the request for a change in legal custody because I don't think that there is a change in circumstances or proper cause to justify a hearing on that.

The trial court further stated that it wanted this matter to be addressed as soon as possible, so it was referring the matter to a referee. However, the trial court entered a generic order that merely provided that the case was referred to the referee regarding "parenting time" and "child custody," and was to be conducted via Zoom.[5]

The referee held more than a dozen evidentiary-hearing sessions, starting in December 2021 and ending in October 2022.[6] Consistent with his motion for sole custody, defendant's theory at the evidentiary hearing was that plaintiff was engaging in parental-alienation tactics. Defendant's expert witness, Robert Evans, testified that parental alienation occurs when a child rejects a parent without justification on account of the other parent's influence. Evans provided a five-factor model to identify when parental alienation exists, and all five factors must be present for alienation to be occurring. The five factors are (1) the child is manifesting resistance or refusal to be with a parent, (2) the child has had a prior positive, loving relationship with the parent, (3) the absence of abuse or neglect on the part of the rejected parent, (4) the use of multiple alienating behaviors on the part of the favored parent, and (5) the presence of parental-alienation symptoms in the child. However, Evans emphasized that he was not offering any opinion whether parental alienation was occurring in this case, but only offering his expertise to help inform and aid the court about the syndrome. Evans stated that any parent engaging in such tactics is engaging in child abuse.

Plaintiff testified that she has continued to work with three different coaches, William Stierle, Lisa Gottlieb, and Siri Gottlieb. Plaintiff first engaged the services of Stierle, a nonviolent communications specialist in California, when she, defendant, and KEP vacationed in California in the summer of 2019. Stierle opined that neither parent has the intention of keeping KEP from the other parent. Lisa testified that she is a licensed social worker in Michigan and has a "private coaching practice." She testified that she started seeing plaintiff, defendant, and KEP in August or September 2020, but she admitted that because her last session with defendant was in October

---

[5] Because of plaintiff's failure to comply with prior discovery requests and orders, the trial court entered an order on January 26, 2022, requiring plaintiff to file her witness list, expert witness list, and exhibit list by January 31, 2022. The trial court prohibited plaintiff from introducing any documentary evidence that could have been produced, but was not produced, in response to the earlier discovery request. Any documentary evidence that plaintiff wanted to introduce was required to be identified in her exhibit list.

[6] Although plaintiff had three retained attorneys at the September 1, 2021 motion hearing, she appeared *in propria persona* for most of the hearing sessions with the referee. It was not until a session on June 22, 2022, that plaintiff was represented by counsel at the evidentiary hearing.

2020, it was fair to say that she is plaintiff's coach. Lisa had some concerns about KEP's activities at defendant's house, including defendant having KEP watch scary movies, such as Poltergeist, that he did not want to watch. Lisa was concerned that defendant did not seem to understand that this type of movie was inappropriate for KEP, and simply explaining that "it's not real" is insufficient. Lisa also noted that KEP reported defendant locking him in a closet, physically restraining him, and spanking him. Siri did not testify.

Plaintiff presented Kelly Champion as an expert in forensic psychology and child treatment. Champion testified that the American Professional Society on the Abuse of Children has never recognized parental alienation, by itself, as constituting child abuse. She also testified that there is no medically accepted definition and procedure for determining whether parental alienation is present. Although Champion acknowledged that there were concerns of KEP being coached to make the sexual-assault allegation against defendant, she opined that it is rare for a child to give a report that is coached. She was unable to offer an opinion whether KEP had been coached in this instance.

In the midst of the evidentiary hearing, defendant filed an ex parte motion to suspend plaintiff's parenting time. He alleged that plaintiff and KEP were in the Upper Peninsula on a camping trip the weekend of July 23, 2022. In the middle of the night, plaintiff purportedly had a "mental health episode," whereby she decided that both she and KEP would leave the campsite at 3:00 a.m. and ended up sleeping in her car at a closed motel because she felt "something wasn't right." Plaintiff called defendant to meet them, and he met them in Flint, but plaintiff refused to talk about the situation anymore. At KEP's following therapy session, KEP purportedly told the therapist that plaintiff told him not to discuss what happened at the camping trip because she "would get in trouble." The therapist reported the incident to CPS. The trial court granted defendant's ex parte motion, which was later extended to August 31, 2022. The trial court explained that if the CPS report was found to be unsubstantiated, then plaintiff's former parenting time would automatically be reinstated. The CPS report was not admitted into evidence, but it evidently was unsubstantiated.

On September 13, 2022, plaintiff filed an ex parte motion for sole custody of KEP. Plaintiff listed a litany of reasons why her motion should be granted, including that (1) defendant withheld parenting time before the trial court entered the ex parte order suspending her parenting time, (2) while the order was in place, defendant unilaterally changed KEP's school, (3) defendant purchased a cell phone for KEP and told him to not contact plaintiff on it, (4) defendant refused to pay for use of Our Family Wizard, (5) defendant refused to inform plaintiff of where or when he was getting KEP vaccinated, and (6) defendant worked 60 hours a week and did not have sufficient time to parent KEP. The trial court denied the motion on an ex parte basis, ruling that there was not a sufficient factual basis to show that irreparable injury would result from providing notice to defendant. The trial court later denied the motion in full, ruling that plaintiff failed to demonstrate proper cause or a change in circumstances. However, the trial court ordered that KEP be re-enrolled in the school he attended the previous year.

The crux of defendant's position is that plaintiff has been engaging in parental-alienation tactics since the entry of the March 2020 custody order. In support, defendant primarily relied on (1) the two allegations to CPS that were found to be unsubstantiated, (2) the accompanying withholding of parenting time, (3) the fact that the people who administered the forensic interview

at Kids Talk thought that plaintiff had coached KEP, and (4) plaintiff's actions of involving the police hours after the court ordered her to facilitate immediate make-up parenting time and her reiterating the unsupported claims of abuse to the police.

Plaintiff argued that the evidence did not support a finding of parental alienation, and therefore, the necessary threshold showing of a change in circumstances to warrant modifying the existing parenting time and custody order did not exist. Plaintiff further argued that because an established custodial environment existed with her, defendant's motion should be denied because he failed to show by clear and convincing evidence that a change was in KEP's best interests.

The referee noted that on September 1, 2021, the trial court made the initial threshold determination that there had been a change in circumstances with respect to parenting time, but not legal custody. Regarding parental alienation, the referee found that Evans was not credible and did not find that any parental-alienation tactics were used in this case.[7] The referee noted that plaintiff went out of her way to utilize different professionals to help the parties, which is antithetical to alienating behavior. The referee found that plaintiff and defendant are very different people with very different parenting styles, with defendant being much more "rigid" and plaintiff being "very loosey-goosey," which created challenges to their relationship and their ability to co-parent. The referee also was troubled by plaintiff's interactions at the police station, particularly the "adult conversations" that plaintiff had with the police in the presence of KEP. While the referee was further troubled by plaintiff's purported behavior of leaving the campground in the middle of the night with KEP, because there was no psychological report to review due to defendant's successful opposition to the admission of Dr. Shiener's report, the referee considered defendant's allegation that plaintiff had mental-health issues to be abandoned.

The referee found that an established custodial environment existed with both parents, which meant that defendant had the burden to show by clear and convincing evidence that his motion for sole custody should be granted. The referee found that defendant failed to make such a showing and recommended denying the motion. The referee lamented that defendant's focus was on plaintiff's behavior, and not on how that behavior adversely affected KEP.

Defendant filed an objection to the referee's recommendation and requested de novo review by the trial court, which the court granted. No new witnesses or exhibits were heard or received at the de novo hearing. In a written opinion and order, the trial court first found that an established custodial environment existed with both parents. The trial court then noted that because the relief defendant was requesting in his motion would alter the established custodial environment with respect to plaintiff, it must employ the standard set forth in *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003). Under the *Vodvarka* framework, defendant had to show a material change in circumstances that has or could have a significant impact on the child's well-being. The trial court found that defendant failed to meet this burden.

---

[7] Although the referee used the term "credible," it does not appear that the referee found that Evans's testimony was not believable, but only that it decided to give greater weight to Champion's testimony compared to Evans's testimony.

The trial court determined that defendant failed to connect the evidence pertaining to plaintiff's actions to a negative impact on KEP. The trial court further noted that the primary reason defendant believed that custody should be altered is that plaintiff had engaged in alienating behavior, but it found that defendant had engaged in the same tactics himself.[8]

The trial court acknowledged that it initially stated that proper cause or a change in circumstances had been shown to modify parenting time and physical custody. However, it noted that the prior determination was never reduced to a written order. Exercising its inherent authority to direct and control its proceedings, the trial court put its more recent determinations in writing. The trial court concluded that defendant failed to show by a preponderance of the evidence that there was proper cause or a change in circumstances, and therefore, denied defendant's motion.

## II. BIFURCATION OF CUSTODY ANALYSIS

Defendant argues that the trial court erred when it initially bifurcated the issues of physical and legal custody. We agree, but because the error is harmless, defendant is not entitled to any relief. Questions of law in custody cases are reviewed for clear legal error. *Id*. at 508. "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted).

To minimize unwarranted and disruptive changes in custody orders, a trial court may modify a custody order only if the moving party establishes proper cause or a change of circumstances. *Corporan v Henton*, 282 Mich App 599, 603; 766 NW2d 903 (2009). "[T]he moving party must establish by a preponderance of the evidence an appropriate ground that would justify the trial court's taking action." *Mitchell v Mitchell*, 296 Mich App 513, 517; 823 NW2d 153 (2012). "Appropriate grounds should include at least one of the 12 statutory best-interest factors and must concern matters that have or could have a significant effect on the child's life." *Id*.

At the initial hearing on defendant's motion for sole custody, the trial court addressed whether there was proper cause or a change in circumstances, stating:

> There have been several events that have occurred since [March 4, 2020,] that could possibly lead to a result in a change of parenting time. I'm not sure if it would really rise to the level of a significant enough change in parenting time to also be a change in custody, meaning physical custody. I don't believe that the allegations

---

[8] Although the trial court did not believe that the framework from *Shade v Wright*, 291 Mich App 17; 805 NW2d 1 (2010), for determining whether proper cause or a change of circumstances existed was applicable, the court nonetheless "in the interest of thoroughness" performed that analysis. This Court in *Shade* held that when a movant seeks to modify parenting time, instead of custody, which does not affect the established custodial environment, then a different, less-exacting standard exists to determine whether proper cause or a change of circumstances has been shown. *Id*. at 26-28. We agree that because it was plainly evident that defendant was requesting a change in custody that would affect KEP's established custodial environment, the *Shade* framework is not applicable.

alleged rise to the level of a change -- of a change of circumstance or proper cause to justify a change in legal custody. . . .

So, I am going to grant the request for a hearing on parenting time and physical custody because I do think there's a change in circumstances which could lead to a modification of that.

I am going to deny the request for a change in legal custody because I don't think that there is a change in circumstances or proper cause to justify a hearing on that.

In *Merecki v Merecki*, 336 Mich App 639, 643; 971 NW2d 659 (2021), in response to the plaintiff's motion to modify custody, the trial court adopted the referee's recommendation that the motion be denied as to physical custody because the plaintiff "failed to set forth a basis for modification of physical custody," but referred the matter for a facilitation on whether to modify legal custody. After hearing objections by the defendant, the trial court ultimately allowed the request for modification of legal custody to go forward to an evidentiary hearing. *Id*. at 644. This Court held that "[t]he court's initial error was to bifurcate physical and legal custody, denying a hearing on one and referring the other to facilitation." *Id*. at 647. Because *Vodvarka* did not distinguish between the requisite standard for changing physical custody and legal custody, "the trial court committed clear legal error by treating the two forms of custody differently." *Id*. Therefore, the trial court in this case also committed clear legal error when it denied a hearing on legal custody, but granted it with respect to physical custody.

However, defendant has not provided any cogent basis to reverse the trial court's ultimate ruling on this basis. In its opinion and order of the de novo review, the trial court proceeded to analyze whether there was proper cause or a change in circumstances under the *Vodvarka* standard.[9] It is this standard that is to be used to determine if there is proper cause or a change in circumstances to warrant potentially changing custody. *Vodvarka*, 259 Mich App at 508-513.

Thus, because the trial court used the correct standard for determining if proper cause or a change in circumstances existed, defendant cannot show that the court's initial bifurcation is a reason to reverse or vacate the court's later ruling. In other words, although the trial court performed a bifurcated analysis, it ultimately found that there was no proper cause or a change in

---

[9] In *Vodvarka*, this Court concluded that proper cause must involve "one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Vodvarka*, 259 Mich App at 511. For similar reasons, this Court concluded that a "change of circumstances" should be understood to require the movant to "prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id*. at 513. In other words, "not just any change" will suffice to justify revisiting custody—the "evidence must demonstrate something more than the normal life changes" to rise to the level of a change of circumstances that would warrant revisiting custody. *Id.* at 513-514.

circumstances to modify legal custody or physical custody. Accordingly, any remand for the trial court perform a new analysis regarding whether "custody," in general, should be modified would be a waste of judicial resources because, with it employing the proper *Vodvarka* analysis, there is nothing to suggest that the court would end up with a different outcome.

### III. RECONSIDERATION OF PRIOR RULING

Defendant next argues that the referee and the trial court made many legal errors that require reversal. We disagree. Defendant raises questions of law, which we review for clear legal error. *Id*. at 508.

At the outset, we note that most of the issues defendant raises are not properly presented to this Court. Issues not mentioned in an appellant's statement of the questions presented are abandoned. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008). Defendant's statement of the question presented for this issue relates solely to the fact that the trial court, after a lengthy evidentiary hearing, reversed its initial finding that there was proper cause or a change in circumstances to support a change in custody.[10] His arguments for the most part do not address the presented issue. We therefore deem those arguments abandoned.[11] *Id*.

Regarding the issue that was raised in the statement of the question presented, defendant avers that the trial court should not have made the initial proper cause or change in circumstances determination, have the parties participate in a lengthy evidentiary hearing, and then later revise its initial determination, thereby vitiating the evidentiary hearing. Although we perceive no ground for reversal, we are troubled by the trial court's actions. It is well established that no evidentiary hearing on a motion to change custody can be held unless the movant has established proper cause or a change in circumstances. See, e.g., *Vodvarka*, 259 Mich App at 508. If the trial court had dedicated more time and effort to its initial threshold finding, this lengthy proceeding may have been avoided. However, although the result means that the parties participated in a wasteful enterprise, the trial court's actions were authorized by law. "[A] trial court has unrestricted discretion to review its previous decision." *Prentis Family Foundation, Inc v Karmanos Cancer Institute*, 266 Mich App 39, 52-53; 698 NW2d 900 (2005); see also *Kokx v Bylenga*, 241 Mich

---

[10] The question presented states, "Did the Trial Court err when it found sufficient proper cause or a change of circumstances, forced the parties to undergo a child custody trial through the Friend of the Court, only to subsequently reverse its own finding and conclude that there was not proper cause or a change of circumstances?"

[11] Most of these arguments are focused on the referee's actions. For example, defendant argues that the referee applied a clear-and-convincing-evidence standard at one point, when instead the referee should have applied a preponderance-of-the-evidence standard. But whether the referee made any errors is immaterial because the trial court conducted its own de novo review of the matter. Thus, such arguments are meritless in any event.

App 655, 659; 617 NW2d 368 (2000). Therefore, to the extent that defendant argues that the trial court was legally precluded from revising its previous ruling, this argument is without merit.[12]

## IV. PROPER CAUSE OR CHANGE OF CIRCUMSTANCES

Defendant next argues that the trial court's finding that he failed to show proper cause or a change in circumstances is against the great weight of evidence. We disagree. This Court reviews a trial court's finding related to the existence of proper cause or a change in circumstances under the great-weight-of-the-evidence standard. *Corporan*, 282 Mich App at 605. Under this standard, this Court defers to the trial court's findings of fact unless the evidence clearly preponderates in the opposite direction. *Id*.

A party seeking a change in custody of a child is required to first demonstrate to the trial court either proper cause or a change of circumstances. *Id*. at 603. "[P]roper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Vodvarka*, 259 Mich App at 511. "Appropriate grounds should include at least one of the 12 statutory best-interest factors and must concern matters that have or could have a significant effect on the child's life." *Mitchell*, 296 Mich App at 517.

> [T]o establish a "change in circumstances," a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed. Again, not just any change will suffice, for over time there will always be some changes in a child's environment, behavior, and well-being. Instead, the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. This too will be a determination made on the basis of the facts of each case, with the relevance of the facts presented being gauged by the statutory best interest factors. [*Vodvarka*, 259 Mich App at 513-514.]

The trial court found that defendant failed to demonstrate proper cause or a change in circumstances. With regard to a change in circumstances, the trial court noted that any such

---

[12] We note that the trial court's justification for revisiting its earlier ruling is muddled. The trial court noted that its initial September 1, 2021 ruling was never reduced to a written order. The trial court then cited the well-known principle that a court speaks through its written orders. The trial court stated, "As no written order was entered memorializing this Court's initial determination, the Court exercised its authority to address that now." The trial court also cited the principle that trial courts have the express authority to direct and control the proceedings before them. While the cited principles are valid principles, we fail to see how they truly pertain to the trial court's decision to reconsider and revise its prior ruling. The issue is not that the prior ruling was never reduced to writing, it was that the trial court later completely changed that prior ruling.

changes needed to come into existence since the prior custody order, see *id*. at 514, which was March 4, 2020.[13] However, facts proving proper cause are not limited to the time since entry of the previous custody order. *Id*. at 515.

Here, the trial court seemingly accepted defendant's testimony about many of the events that transpired leading up to the filing of his motion. But the trial court found that defendant "failed to connect his evidence to an impact on the child on many of his grounds." In sum, the trial court found that defendant failed to demonstrate how any of the purported facts or events negatively impacted KEP, which meant that they necessarily could not constitute proper cause or a change in circumstances.

On appeal, defendant argues that plaintiff's engaging in parental-alienation tactics directly relates to best-interest factor (j), which considers

> [t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent. [MCL 722.23(j).]

The main thrust of defendant's argument was, and is, that plaintiff had been engaging in parental-alienation tactics, which, on its face, is plainly antithetical to factor (j). The trial court seemingly required defendant to prove that in addition to such parental-alienation tactics existing, he had to prove resulting harm to KEP. The Court in *Vodvarka* expressly refuted such a position. The Court noted that it was sufficient to prove proper cause by showing that a relied-upon ground "*could have* a significant effect on the child's life." *Vodvarka*, 259 Mich App at 511 (emphasis added). The Court explained that allowing grounds merely having the potential to have a significant effect on the child is not an invitation to welcome speculation, but instead recognizes "that a court need not await some negative effect on a child before undertaking an examination of the child's best interests." *Id*. at 511 n 10. Thus, to the extent that the trial court required defendant to prove harm to establish proper cause, that was erroneous.

However, the trial court found that plaintiff's behavior did not constitute parental alienation as defined by statute. The trial court stated at one point, "Defendant failed to demonstrate that Plaintiff's conduct *when she believed she was informing authorities to investigate possible harm to the child* caused any harm to the child or affected the relationship the child has with Defendant." (Emphasis added.) Later, the trial court stated, "[T]he strongest reason Defendant believed the Court should consider modifying custody and parenting time in this case relates to Plaintiff's 'alienating behavior,' which encompasses withholding the child for parenting time *when she was concerned* [*about*] *abuse to the child* that was being investigated." (Emphasis added.) Although it would have been preferable for the trial court to make such findings more forcefully, the record

---

[13] No party challenges the trial court's determination that the March 4, 2020 order is the appropriate previous order to consider.

shows that the court found that plaintiff genuinely believed that her child was harmed while in defendant's care and took steps she thought best to protect him. Such actions, by statutory definition, would not qualify as being contrary to MCL 722.23(j), which states that "[a] court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent." Further, this finding is not against the great weight of the evidence. There is no evidence that plaintiff knowingly made false allegations against defendant or withheld parenting time relying on the false allegations as a pretext. At best, the evidence showed that the allegations were later unsubstantiated by CPS, but that does not mean that plaintiff falsified the episodes or acted irrationally. Consequently, we affirm the trial court's ultimate finding of no proper cause or a change in circumstances.

Defendant also argues that his distrust of plaintiff's judgment qualifies as proper cause or a change in circumstances. We disagree. Defendant contends that his distrust relates to best-interest factor (j) as well, but we fail to see the connection. Assuming defendant possesses a genuine distrust of plaintiff's judgment, he does not explain how that distrust manifests itself such that it affects the child or best-interest factor (j). Contrary to defendant's apparent position, his lack of trust, by itself, does not implicate factor (j). Accordingly, we reject this particular argument.

## V. CONCLUSION

There were no errors warranting relief. Consequently, we affirm.

/s/ Sima G. Patel
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan