*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HAC,

      Petitioner-Appellant,

v

ER,

      Respondent-Appellee.

UNPUBLISHED
August 11, 2025
3:21 PM

No. 370666
Oakland Family Division
LC No. 2024-525390-PH

---

HAC,

      Petitioner-Appellant,

v

AR,

      Respondent-Appellee.

No. 372613
Oakland Family Division
LC No. 2024-525274-PH

---

Before: PATEL, P.J., and RIORDAN and SWARTZLE, JJ.

PER CURIAM.

In Docket No. 370666, petitioner appeals as of right the order denying his petition for a nondomestic personal protection order ("PPO") against respondent, ER. In Docket No. 372613, petitioner appeals by delayed leave granted[1] the order denying his petition for a nondomestic PPO against respondent, AR.[2] We affirm.

---

[1] *HAC v AR*, unpublished order of the Court of Appeals, entered November 20, 2024 (Docket No. 372613) (*HAC I*).

[2] AR and ER are referred to collectively as respondents.

# I. BACKGROUND

This matter arises from petitioner's attempts to obtain nondomestic PPOs against his neighbors, AR and ER, who are husband and wife. Over the past four or five years, petitioner has allegedly become emotionally distressed because of respondents' alleged acts of trespass, nuisance, and destruction of property. Petitioner also alleged other threatening behaviors, including arguments with name-calling and respondents shining exterior flood lights on his home at nighttime, which affects his ability to sleep.

On February 6, 2024, petitioner sought an ex parte PPO against AR, requesting that the trial court prohibit AR from, among other things, stalking him. Petitioner requested other relief, stating: "Do not trespass, touch my property, destroy my woods[,] plants[,] etc. Do not flood my property. Do not shine lights at my house. Do not harass me or my residence. Do not create [nuisance][.]" Petitioner also sought an expedited hearing. The trial court found that "it cannot grant the petition ex parte based on the facts presented," but scheduled an expedited hearing. On February 12, 2024, petitioner sought an ex parte PPO against ER, requesting that the trial court prohibit ER from, among other things, stalking him. Petitioner sought additional relief against ER, stating: "As a real estate Attorney she is in violation of her Cannons [sic], Michigan Compiled Law, and local ordinances. [ER] should remove all light transmissions onto my property, cease removing Survey stake, and refrain from approaching me and my friends, [and] [family] in my backyard[.]" Petitioner requested an expedited hearing. The trial court again found that "it cannot grant the petition ex parte based on the facts presented," but scheduled an expedited hearing at the same time as the petition against AR.

After petitioner testified at the hearing, respondents' counsel moved to dismiss both petitions. The trial court granted the motion and dismissed both petitions because petitioner "failed to meet the burden of proof." The trial court found that AR and ER have "not committed two or more acts of willful, unconsented contact." Petitioner moved for reconsideration of the orders denying his petitions against AR and ER, and the trial court denied both motions. These appeals followed.[3]

# II. ANALYSIS

## A. STANDARDS OF REVIEW

A PPO constitutes injunctive relief. This Court reviews a trial court's decision to grant or deny a PPO, including a respondent's motion to terminate a PPO, for an abuse of discretion. An abuse of discretion occurs when the court's decision falls outside the range of principled outcomes. A court necessarily abuses its discretion when it makes an error of law. A trial court's findings of fact underlying a PPO ruling are reviewed for clear error. The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made. The interpretation and application of court rules present questions of law to be

---

[3] Petitioner initially refiled his petition for a PPO against AR. The trial court denied the petition, and petitioner filed an appeal. This Court dismissed the claim of appeal "for lack of jurisdiction because an order denying or dismissing a petition for an ex parte personal protection order *without a hearing* is not appealable by right." *HAC v AR*, unpublished order of the Court of Appeals, entered January 29, 2025 (Docket No. 370884) (*HAC II*).

reviewed de novo using the principles of statutory interpretation. [*CAJ v KDT*, 339 Mich App 459, 463-464; 984 NW2d 504 (2021) (quotation marks and citations omitted).]

"Matters of statutory construction are also subject to de novo review." *TT v KL*, 334 Mich App 413, 438; 965 NW2d 101 (2020).

## B. DENIAL OF PPO AGAINST ER AND AR

Petitioner contends that the trial court abused its discretion by denying his petitions for PPOs against AR and ER because he provided sufficient evidence of stalking. We disagree.

MCL 600.2950a is "the nondomestic PPO statute pertinent here, [and] addresses stalking behavior or conduct that is not limited to certain existing relationships." *TT*, 334 Mich App at 439. "Except as otherwise provided in . . . MCL 600.2950a, an action for a PPO is governed by the Michigan Court Rules, with MCR 3.701 *et seq*., applying to PPOs against adults." *Id*.; see also MCR 3.701(A). "The petitioner bears the burden of establishing reasonable cause for issuance of a PPO." *TT*, 334 Mich App at 439 (cleaned up). MCL 600.2950a(1) governs PPOs involving stalking and states, in relevant part:

> [A]n individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin an individual from engaging in conduct that is prohibited under section 411h, 411i, or 411s of the Michigan penal code, 1931 PA 328, MCL 750.411h, 750.411i, and 750.411s. A court shall not grant relief under this subsection unless the petition alleges facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code, 1931 PA 328, MCL 750.411h, 750.411i, and 750.411s. Relief may be sought and granted under this subsection whether or not the individual to be restrained or enjoined has been charged or convicted under section 411h, 411i, or 411s of the Michigan penal code, 1931 PA 328, MCL 750.411h, 750.411i, and 750.411s, for the alleged violation.

The trial court denied each petition because petitioner did not meet the burden of proof and failed to allege facts constituting stalking under MCL 750.411h, aggravated stalking under MCL 750.411i, or cyberstalking under MCL 750.411s. On appeal, only the provisions pertaining to stalking under MCL 750.411h are pertinent. Petitioner contends that AR and ER engaged in stalking and harassment, not aggravated stalking or cyberstalking.

MCL 750.411h governs stalking, which is defined under MCL 750.411h(1)(e) as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested."[4] Under MCL 750.411h(1)(d), "harassment" is defined as

---

[4] When petitioner filed his respective petitions, stalking was defined under subsection (1)(d). Effective February 13, 2024, MCL 750.411h was amended to define stalking under subsection (1)(e). See 2023 PA 199. The definition itself remained unchanged. For the purposes of our opinion, we cite to the current version of MCL 750.411h.

conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

A "course of conduct" is defined as "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a). Further, "emotional distress" is defined as "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." MCL 750.411h(1)(c). "Unconsented contact" is defined under MCL 750.411h(1)(f) as

any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

(*i*) Following or appearing within the sight of that individual.

(*ii*) Approaching or confronting that individual in a public place or on private property.

(*iii*) Appearing at that individual's workplace or residence.

(*iv*) Entering onto or remaining on property owned, leased, or occupied by that individual.

(*v*) Contacting that individual by telephone.

(*vi*) Sending mail or electronic communications to that individual.

(*vii*) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.

This Court has summarized the provisions of MCL 750.411h(1), stating that "stalking entails a course or pattern of conduct that involves continuing or repeated harassment arising out of separate noncontinuous acts . . . thereby justifying the issuance of a PPO to halt the ongoing conduct." *PF v JF*, 336 Mich App 118, 129; 969 NW2d 805 (2021).

Petitioner's assertion that he satisfied his burden of proof showing that AR and ER stalked him by each committing two or more separate acts of unconsented contact, i.e., a course of conduct, or harassment, is meritless. We address each of his factual arguments in turn.

First, in his petition against AR, petitioner alleged that AR removed a "permanent survey iron rod" that had been in the ground "since 1988." Petitioner testified that surveyors put in a "lengthy re-rod" in the ground in 1989. Then, in "late" summer 2023, the "rod vanished." On appeal, petitioner contends that ER removed the rod because "the timing of this occurrence coincided with the other acts of harassment. . . ." This contention, however, is predicated on petitioner's speculation about what might have happened. Petitioner failed to provide an exact date or time when this incident occurred. Worth

noting, the trial court asked petitioner the following question: "You don't know who removed it?" Petitioner answered: "No."

Relatedly, petitioner alleged that his survey stakes, or property markers, were removed and destroyed on January 11, 2024, at about 8:55 p.m. In his petition against ER, petitioner stated that "a woman approached [his] lot line for the direction of [t]he house with [a] flashlight and trespassed upon my property and pulled out and destroyed survey stakes that had just been resurveyed and [] replaced. . . ." In his petition against AR, petitioner stated that the survey stakes were "broken off and violently thrown in my woods." At the hearing, petitioner stated that the stake was removed from the "back of [his] lot line." Petitioner admitted into evidence a home surveillance video showing the stakes being "being destroyed," and testified that he "believe[d]" the individual shown in the video was ER. When the trial court stated, "[y]ou can't see her face," petitioner replied: "I can see a face[.]" Petitioner described the incident as "hostile" and "frightening." However, petitioner admitted that the individual's face in the video was partly covered. Respondents' counsel asked petitioner: "[C]an you unequivocally testify under oath . . . that it is, in fact, [ER] depicted in Exhibit Number 1? Yes or no?" Petitioner answered: "No." Petitioner stated that he did not believe AR appeared in the video either. Petitioner contacted the Oakland County Sheriff's Department to investigate the stakes being removed, but no police officer was called to testify and no report was offered as evidence. Thus, although it is undisputed petitioner's property was destroyed, there was no persuasive evidence showing that respondents were responsible for these incidents.

Second, petitioner alleged several incidents in which ER harassed him by running toward him and yelling. On one occasion, ER "accused [petitioner] of using a gas chain saw and cutting down trees[.]" On another occasion, petitioner left ER a voicemail stating "[respondents'] survey were [sic] in error to [his] superior . . . [surveys]." ER allegedly called petitioner back and "started screaming F-Bombs. . . ." Similarly, his petition against AR alleged that, in fall 2023, AR "came running out asking what [petitioner] [was] doing." Petitioner alleged that this happened "repeatedly." Petitioner alleged that AR insulted him by "insinuat[ing] [he] [is] senile" and "questioning [his] age and mental functioning." At the hearing, petitioner stated that, while he is in his backyard, AR and ER have "come running out of their house, hollering at me, what am I doing." Petitioner stated that AR and ER "stay in their yard" but "come over to me." Despite alleging numerous occurrences, however, petitioner did not provide exact dates or times. Petitioner did not provide sufficient details for his claims that AR and ER yelled at him and insulted him. When the trial court asked for exact dates, petitioner did not remember, only noting that the last time this happened was in the "[l]ast year or something." Thus, given this lack of detail, the trial court did not clearly err by finding that these allegations did not rise to the level of "stalking" under MCL 750.411h(1)(e).

Third, the petition against ER alleged that respondents "installed powerful spot lights that are aimed [at] [petitioner's] house," causing petitioner to "[b]lack out my windows so [he] can [s]leep." In his petition against AR, petitioner alleged that the spot lights "are aimed at [his] house." Petitioner testified that the exterior flood lights have shined on his home for the past five or six months before he filed the petitions. Specifically, the flood lights shine toward the windows of his home during the nighttime, or "[a]ll night, from dark." On at least one occasion, petitioner texted respondents to cease shining the lights toward his home. On another occasion, petitioner asked them in-person to "direct [the lights] away from [his] house." At an unknown time and date, a "zoning officer" visited petitioner's house after petitioner complained that respondents were violating the lighting ordinance. Petitioner stated that the lights were still shining on his home as of the night of February 22, 2024. Several photographs were

admitted into evidence, which showed the lights at respondents' house, how the lights shine on petitioner's home, and poster board and cardboard covering petitioner's windows. Petitioner contends that the light stemming from respondents' flood lights constitutes unconsented contact under MCL 750.411h(1)(f)(*vii*). Specifically, petitioner contends that the light from respondents' flood lights "consist[s] of 'packets of energy' which, while different in kind than a physical object, is no less an 'object' than any other object." However, except for providing one dictionary definition of "light," petitioner offers no other authority or rationale in support of this argument, so we consider it abandoned. See *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008). In any event, we agree with the trial court that such allegations, if true, might constitute some type of "ordinance violations" but do not necessarily rise to the level of requiring a PPO.[5]

Fourth, the petition against AR alleged that, sometime in "the past two years," AR hired landscapers who trespassed on petitioner's property "and cut down tree branches." Petitioner felt intimidated as a result. At the hearing, petitioner described an incident three or four years ago when AR and ER cut down trees on his property. Further, in his petition against AR, petitioner alleged that AR and ER have spied on him because "they knew my other car and I hadn't driven it on the streets yet." Petitioner testified that "they seem to be observing me . . . because [AR] made a comment one time about a car I was driving." Petitioner added that he did not drive the subject car often and he did not "know how anybody could know I was driving that car." However, in addition to the fact these allegations are speculative, there was inconsistency regarding the dates when the tree cutting occurred and who performed the act. There were also no details as to when any spying occurred. The trial court did not err by declining to grant a PPO on this basis.

Fifth, in his petition against AR, petitioner asked the trial court to prohibit AR from flooding his property. At the hearing, petitioner alleged that areas of his property began flooding four or five years ago when AR and ER were building their house and "removing all the vegetation." Petitioner alleged that the flooding still occurs when it rains, which is the result of respondents removing their vegetation. Petitioner argues that this constitutes an unconsented contact under MCL 750.411h(1)(f)(*vii*) because the water is an "object" that AR and ER caused to enter on his property. This argument is speculative. Petitioner offered no evidence establishing that the source of the flooding was attributable to the acts of respondents. More importantly, as indicated *supra*, this alleged conduct by respondents might warrant some other type of relief for petitioner outside of the scope of a PPO.

---

[5] In addition, the petition against ER alleged that on February 7, 2024, AR and ER "shined their car bright lights into [his] house for 40 minutes" as "retribution" for petitioner reporting respondents for a zoning violation. At the hearing, petitioner testified that there was "an occasion where a vehicle with its headlights on . . . the beams were directed to [his] house from [respondents'] house and lit up the inside of [his] family room." Petitioner stated that he witnessed this happen for "at least ten minutes" and then went to his basement. On appeal, petitioner asserts that one or both respondents were responsible because "the timing of this incident occur[ed] shortly after [he] filed his petition. . . ." However, petitioner testified that he did not see who was inside the vehicle. He stated that he did not know the make or model of the vehicle, or to whom it belonged. When specifically asked if the vehicle belong to AR or ER, petitioner stated: "I don't know." Thus, the trial court did not err by declining to grant a PPO on this basis.

Ultimately, petitioner contends that the totality of these incidents constitutes stalking and has caused him emotional distress. Petitioner testified that he is "very fearful" and has endured "repeated emotional stress and trauma." However, worth noting, when asked by the trial court if there was anything respondents actually did to him, he replied: "No." Petitioner admitted that neither AR nor ER physically harmed or threatened him. Nor has petitioner sought any medical treatment or counseling.

The trial court dismissed the petitions because petitioner "failed to meet the burden of proof" and found that AR and ER have "not committed two or more acts of willful, unconsented contact." The trial court explained:

> Based upon the testimony of [petitioner] and the exhibits offered into evidence[,] which include a video, I find that the Petitioner has not submitted evidence constituting stalking, aggravated stalking, or cyberstalking. Specifically, I find that the Respondents' alleged actions in having a bright light shining from their property do not constitute stalking, aggravated stalking, or . . . cyberstalking. And I further find that the Respondents . . . did not engage in a course of conduct with the intent to cause the Petitioner to feel terrorized, frightened, intimidated, harassed, or molested. . . . I find that the Petitioner has not suffered emotional distress as a result of the alleged conduct.

For the reasons explained, the trial court's findings of facts were not clearly erroneous because the record does not contain sufficient facts establishing that AR or ER stalked petitioner.

## III. CONCLUSION

The trial court did not clearly err when making its findings of fact concerning the petitions for PPOs against AR and ER. Further, the trial court did not abuse its discretion by denying the petitions for PPOs against AR and ER.

Affirmed.

/s/ Sima G. Patel
/s/ Michael J. Riordan
/s/ Brock A. Swartzle