*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. C. M. BASKIN, Minor.

UNPUBLISHED
March 18, 2026
10:01 AM

No. 374097
Wayne Circuit Court
Family Division
LC No. 2024-000868-NA

Before: RIORDAN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to minor child, CCMB, under MCL 712A.19b(3)(b)(*i*) (parent caused physical harm to child or sibling and there is a reasonable likelihood of injury if the child is placed with the parent), (3)(g) (failure to provide proper care and custody despite the financial ability to do so), and (3)(j) (reasonable likelihood of harm if returned to parent).[1] We affirm.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This case arises from a motor-vehicle collision involving respondent and her other minor child, JDKB. On the day of the fatal car accident, respondent woke up, put CCMB, a girl aged six, and JDKB, a boy aged four, in her car, to drive CCMB to school. Respondent put neither child in a booster seat as she decided to not make the effort of retrieving the seats from the trunk of the car where they were stored. After dropping CCMB off at her school, respondent then ran some errands with JDKB and a friend in the car with her. On the way home from the errands, respondent was traveling along I-94, and was attempting to turn onto I-75, when her car brakes gave out. Respondent's vehicle traveled down an embankment, onto I-75, and crashed into three other vehicles. During the collision, JDKB, who was not restrained in his booster seat, was ejected from

---

[1] While the trial court's order does not expressly identify the statutory grounds for termination, it indicated at the best-interest hearing that the grounds were "(b)([*i*]), (g), and (j)." Thus, we infer that MCL 712A.19b(3)(b)(*i*), (g), and (j) were the statutory grounds for termination.

the car. After the ejection, JDKB was rushed to Children's Hospital of Michigan where efforts to revive him were unsuccessful and he died that day.

When a Michigan State Police Trooper spoke with respondent at the hospital soon after the accident, the respondent was showing signs of marijuana impairment. The trooper put respondent through a series of standard field sobriety tests during which she performed very poorly and indicated to the trooper that she was under the influence of marijuana. Respondent also told the trooper that she was a daily user of marijuana, that the car she was driving had faulty brakes and other mechanical issues and that she had been trying to contact the person from whom she bought the car to repair them. The respondent informed the trooper that she did not have a driver's license or valid insurance on the car.[2]

Two days after JDKB's death, the Department of Health and Human Services (DHHS) filed a petition seeking to terminate respondent's parental rights at the initial disposition. In support of its request, DHHS cited a risk of harm to CCMB given that JDKB's death was the result of respondent's physical neglect. Respondent entered a "no contest" plea to statutory grounds and jurisdiction.

A best-interest hearing was held over the course of three days in front of a referee. The witnesses all confirmed the version of events in which respondent drove a car in disrepair, while she was impaired, and while her children were unrestrained. At the end of the final day, the referee found that termination of respondent's parental rights was in CCMB's best interests. On the same day, the referee issued an order, recommending that the trial-court judge adopt the recommendation as the evidence demonstrated that respondent made reckless choices that created a serious risk of harm to others, including her minor children. The trial-court judge then adopted the referee's recommendation and terminated respondent's parental rights to CCMB. This appeal followed.

## II. REUNIFICATION EFFORTS

On appeal, respondent argues that the trial court erred by finding that termination of her parental rights was in CCMB's best interests. However, while presenting that argument to this Court, respondent briefly suggests that she should have been provided with a treatment plan and reasonable efforts should have been made toward reunification. We conclude that this issue is abandoned and waived for two reasons.

First, "[a]n appellant may not merely announce its position and leave it to this Court to discover and rationalize the basis for its claims." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008). "This Court is not required to search for authority to sustain

---

[2] On April 3, 2025, respondent pleaded guilty or no contest to involuntary manslaughter as the result of the motor-vehicle collision. Respondent was sentenced to six months in Wayne County Jail and three years of probation. While this information is not in the lower court record, "[t]his Court may take judicial notice of public records." *Precise MRI of Mich, LLC v State Auto Ins Co*, 340 Mich App 269, 281 n 5; 985 NW2d 892 (2022).

or reject a position raised by a party without citation of authority." *Id*. "It is not enough for an appellant in his brief simply to . . . assert an error and then leave it up to this Court to . . . unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Id*. (quotation marks and citation omitted). In the event a party "fails to cite authority for this position . . . the issue is therefore deemed abandoned." *Id*. at 221. Similarly, when an issue "is not contained in the statement of questions presented[,] it is therefore deemed abandoned." *Id*.

The issue of whether respondent should have been provided with reunification efforts is not included in her statement of questions presented on appeal. Additionally, when respondent does address this issue within her brief, she includes insufficient authority in support of her position. Respondent cites only one authority in her appellate brief, *In re Newman*, 189 Mich App 61; 472 NW2d 38 (1991), in support of her contention, but she does not identify what portion of that decision supports her argument. Furthermore, our review of the *Newman* case does not show anything that could be considered to offer support of her contention in light of the factual scenario before us. Therefore, because respondent has failed to include the issue of reunification within her statement of questions presented and include sufficient authority in support of her position regarding reunification, we consider the issue to be abandoned.

Second, even if respondent did not abandon the reunification issue through her insufficient briefing, she waived the issue by entering a no-contest plea to jurisdiction and statutory grounds for termination. In particular, at a July 22, 2024 hearing, the trial court explained as follows when accepting her plea:

> The Court: Okay. And you understand that if the Court takes jurisdiction, after accepting this no-contest plea, and the Court does not terminate your parental rights after a best interest hearing; that the children will be adjudicated. The Court will take jurisdiction over your children and order you to do certain things before your children can be returned to your care. Do you understand that?
>
> [Respondent]: Yes.

Then, after confirming with the attorneys that its advice of rights was satisfactory, the trial court reiterated to respondent that the next step in the process was a best-interest hearing to determine whether termination of her parental rights was appropriate:

> But the Court, today, as I said [respondent], we're not terminating parental rights because the Court doesn't do that until a best interest finding is made. The Court has to hear evidence and testimony about what is in the best interest of these children.

Simply put, the trial court informed respondent during the plea colloquy that the next step in the process was a best-interest hearing to determine whether it should terminate her parental rights and, in the event that it did not terminate her parental rights, it would "order [her] to do certain things before [CCMB] can be returned to [her] care." Thus, while the trial court did not expressly use terms such as "reasonable efforts" or "reunification," the trial court did indicate to respondent that reasonable efforts for reunification would occur only in the contingent event that

-3-

it did not decide to terminate her parental rights after making a best-interest determination. Accordingly, the trial court again reiterated to respondent that the next step in the process was a best-interest hearing to determine whether it would terminate her parental rights.

Under these circumstances, respondent waived any argument on appeal that she did not receive reasonable efforts for reunification. See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011) ("Respondent may not assign as error on appeal something that she deemed proper in the lower court because allowing her to do so would permit respondent to harbor error as an appellate parachute.").[3]

Moreover, the plea shows respondent demonstrated multiple instances of reckless choices before operating and then when driving her car. It was those choices which created serious risk of harm to herself, her minor children and other drivers on the road. On the day of JDKB's death, respondent chose to drive in a car in disrepair, without a driver's license, without insurance, with no vehicle registration, and without proper safety restraint for her young children. Additionally, there was enough marijuana in her system to impair her functionality, in a vehicle she knew to have had faulty brakes. These voluntary choices by respondent showed little to no regard for the well-being for her children and resulted in the death of one of them. Therefore, respondent's position concerning reunification is contrary to her plea of no contest and, in any event as discussed, respondent has waived the issue on appeal. See *id.*; *In re Bullard*, unpublished per curiam opinion of the Court of Appeals, issued March 23, 2023 (Docket No. 362065).[4]

### III. BEST-INTEREST DETERMINATION

Respondent contends that the trial court erred when it concluded that termination of respondent's parental rights was in CCMB's best interests. We disagree.

This Court "review[s] for clear error a trial court's factual finding that termination of a parent's parental rights is in the child's best interests." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and

---

[3] We acknowledge *In re MJC*, 349 Mich App 42; 27 NW3d 122 (2023), in which this Court held that "respondent-father, by pleading no contest to the statutory grounds for termination, [did not waive] his right to bring a reasonable-efforts challenge on appeal." *Id*. at 50. However, we respectfully decline to follow that case now because respondent in this case, unlike, apparently, the respondent in *In re MJC*, was informed during the plea process that reasonable efforts for reunification would only occur if the trial court did not decide to terminate parental rights at the best-interest hearing. See *id*. at 54. Moreover, we note that the case before us involves an accelerated process by which respondent pleaded to both jurisdiction and grounds for termination. Whereas, the *In re MJC* proceedings occurred during an extended three-year process, and the only relevant plea discussed in *In re MJC* was the respondent's plea to the grounds for termination. See *id*. at 46-47.

[4] "[U]npublished opinions are not precedentially binding under the rule of stare decisis" but "may be considered persuasive." *Elizabeth Trace Condo Ass'n v American Global Enterprises, Inc*, 340 Mich App 435, 444; 986 NW2d 412 (2022) (quotation marks and citation omitted).

firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (quotation marks and citation omitted). Thus, "[a]ppellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *Id*. (quotation marks and citation omitted).

"Even if the trial court finds that the [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *Sanborn*, 337 Mich App at 276 (quotation marks and citation omitted). A trial court "may consider such factors as the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015) (quotation marks and citation omitted). Further, a child's safety, well-being, and the risk a child might face if returned to the parent's care also are relevant to the best-interest determination. *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011).

Respondent argues that the trial court erred by finding termination was in CCMB's best interests because the trial court did not give sufficient weight to the bond she and CCMB share. We disagree.

While the trial court did not explicitly address the bond between respondent and CCMB, the bond between a parent and the minor child is just one of the factors that may be considered. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Although there was evidence in the record indicating that respondent and CCMB shared a bond, there also was evidence in the record, which the trial court relied on, that weighed heavily in favor of termination regarding respondent's parenting ability. The evidence established that respondent put her 4-year-old and 6-year-old in a vehicle that she knew was in disrepair, and left their booster seats in the trunk while they rode in the car. When she met with law enforcement after the accident, she showed obvious signs of impairment. Based on these facts, the trial court did not clearly err in concluding that respondent's significant threat to CCMB's health and safety outweighed any bond shared with respondent. Thus, notwithstanding any evidence of a bond between respondent and CCMB, the trial court did not commit clear error when it found that termination of respondent's parental rights was in CCMB's best interests.

Respondent next argues that the trial court erred when it relied on speculative anticipatory abuse or neglect. We disagree.

"The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). "However, the probative value of such an inference is decreased by differences between the children . . . ." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020).

First, it should be noted that the trial court did not use the term anticipatory neglect in its holding. Additionally, the trial court's holding does not rely solely on JDKB's death. Rather, the

record reflects that while CCMB was fortunate to make it to school that day, she also rode in respondent's car and was put at significant risk. For that same reason, if the court was applying the doctrine of anticipatory neglect, there would be strong probative value in JDKB's death. Respondent has already demonstrated that by her actions of putting both children in danger.

Respondent's anticipatory neglect argument relies on *In re Figueroa*, an unpublished per curiam opinion of the Court of Appeals, issued May 18, 2023 (Docket No. 362893). In that case, the respondent's parental rights with respect to his biological son were terminated based on the respondent's purported sexual abuse of his stepdaughter. *Id*. at 1-3. The Court held that while this could certainly be a critical consideration, it should not be the only consideration in the best-interest analysis. *Id.* at 4. Further, the Court held that the trial court erred in not analyzing the fact that the respondent's biological son and stepdaughter were different in certain respects, such as having different genders and mothers. *Id*. at 4-5.

Here, the motor-vehicle collision itself was clearly not the trial court's only consideration. In addition to considering the risk that respondent exposed her minor children to on the day of the fatal car accident, in part through her marijuana intoxication, the trial court considered that she also showed up to a parenting visitation with CCMB smelling like marijuana. Further, the trial court considered the fact that CCMB was doing well in foster care and would not regularly ask for her mother.

Furthermore, *Figueroa* is not relevant to the instant case. First, respondent was the biological mother of both children. Additionally, the neglect that led to JDKB's death was not dependent on his gender, it depended upon respondent's actions relating to the condition of the car in which she placed her minor children, that she did not put her children in safe seating, and that respondent was operating the car under the influence of marijuana. Thus, in light of all of these factors, to the extent the trial court relied on the doctrine of anticipatory neglect, it did not err in doing so. As a result, the trial court did not commit clear error in concluding that termination of respondent's parental rights was in CCMB's best interests.

## IV. CONCLUSION

For the reasons discussed above, we affirm.

/s/ Michael J. Riordan
/s/ Christopher M. Murray